(March 19, 1889.)

# WASHINGTON & IDAHO RAILROAD CO. v. COEUR D'ALENE RAILWAY AND NAVIGATION COMPANY ET AL.

[21 Pac. 562.]

INJUNCTION—RIGHT OF WAY—ACTION AT LAW.—Where a railroad prays for a perpetual injunction against another railroad, enjoining the entering upon its right of way and for a decree of title, and it appears at the time of trial the defendant has completed its line of road over the disputed ground and is in the actual occupation and use of the same, held, the court was right in refusing a judgment of perpetual injunction, but should not have passed upon the title, leaving the plaintiff to his action at law.

APPEAL from District Court, Shoshone County.

Woods & Heyburn, for Appellant.

Under the system of express findings, nothing is implied, but full findings are required upon every material issue without any request therefor, and with no exception on account of defects; and, if any material issue is left unfound, it is ground for a reversal of judgment. (*Robinson v. Railroad Co.*, 57 Cal. 417; *Everson v. Mayhew*, 57 Cal. 144; *Knight v. Roche*, 56 Cal. 25.) The finding on every material issue is necessary, although no evidence was introduced upon such issue. (*Campbell v. Buckman*, 49 Cal. 362; *Speegle v. Leese*, 51 Cal. 415.) There is no presumption of an implied finding under our practice. (*Railroad Co. v. Reynolds*, 50 Cal. 90; *Campbell v. Buckman*, 49 Cal. 362; *Dowd v. Clarke*, 51 Cal. 263.) There being findings in the record, there is no presumption of the waiving of findings upon any issue. (*People v. Forbes*, 51 Cal. 628; *People v. Fuqua*, 61 Cal. 377; *Van Court v. Winterson*, 61 Cal. 615.) The approval by the Secretary of the Interior of the act of a railroad in locating its line may perfect a grant of absolute title, which cannot be questioned or defeated by any person other than the government itself. (*Shepley v. Cowan*, 91 U. S. 330; *Johnson v. Towsley*, 13 Wall. 72; *Moffat v. United States*, 112 U. S. 32, 5 Sup. Ct. Rep. 10; *United States v. Minor*, 114 U. S. 233, 5 Sup. Ct. Rep. 836; *Steel v. Refining Co.*, 106 U. S. 450, 1 Sup.

Ct. Rep. 389; *Martin v. Mott,* 12 Wheat. 30.)   As long as a grant remains uncanceled, it cannot be invaded by a mere trespasser, or one who does not claim to enter by virtue of a better title.   (*Aurora Hill Consol. Min. Co. v. Mining Co.,* 34 Fed. 520.)   The courts cannot exercise the power of eminent domain either directly or indirectly.   The question of the propriety or policy of a condemnation is not a judicial one, but one vested solely in the legislative authority.   (Mills on Eminent Domain, sec. 11; *Pittsburgh v. Scott,* 1 Pa. St. 309; *Boston etc. R. Co. v. Salem etc. R. Co.,* 2 Gray, 34, 35.)   The right of way of one railroad cannot be t. 'rn by another, except it be in a canyon, and then only on showi.۟ of actual necessity in suit instituted especially for that purpose.   (*Montana Cent. R. Co. v. Helena etc. R. Co.,* 6 Mont. 416, 12 Pac. 916; *Railway Co. v. Alling,* 99 U. S. 463; *Denver etc. Ry. Co. v. Denver etc. R. Co.,* 17 Fed. 867; *Pennsylvania R. Co.'s Appeal,* 93 Pa. St. 150; *Housatonic R. Co. v. Lee etc. R. Co.,* 118 Mass. 391; *Boston etc. R. Co. v. Lowell etc. R. Co.,* 124 Mass. 368.)   When the plats of the plaintiff were approved, the grant attached and was anchored to the definite line indicated upon the plat.   (*Schulenberg v. Harriman,* 21 Wall. 60; *Ex parte Railway Co.,* 101 U. S. 713; *Leavenworth etc. R. Co. v. United States,* 92 U. S. 741; *Knevals v. Hyde,* 1 McCrary, 402, 6 Fed. 651; *Van Wyck v. Knevals,* 106 U. S. 360, 1 Sup. Ct. Rep. 336; *Kansas Pac. Ry. Co. v. Dunmeyer,* 113 U. S. 629, 5 Sup. Ct. Rep. 566; *Railway Co. v. Alling,* 99 U. S. 475.)

Albert Allen and William H. Clagett, for Respondents.

At the time of making the survey over the line in controversy herein the plaintiff had not filed, or attempted to file, in the office of the Secretary of the Interior, its articles of incorporation or proofs of its organization, and did not do so for more than a month after the survey.   Hence the survey of plaintiff was, at the time it was made, and ever since has been, and is now, absolutely void, as against the defendant, which has, subsequent to such survey, surveyed and constructed its road over the same.   (*Belk v. Meagher,* 104 U. S. 279; *Railroad Co. v. Sture,* 32 Minn. 95, 20 N. W. 229.)

WEIR, C. J.—This is an appeal from a judgment in favor of the plaintiff against the defendants, in which the plaintiff asks a judgment and decree of this court enjoining the defendant, and all persons claiming under it, from in any manner entering upon the right of way of the plaintiff at the town of Wallace, in the county of Shoshone, extending in length a mile and a half, and in width one hundred feet on each side of the central line of the railroad of plaintiff, as surveyed and designated on the ground, and from further constructing said railroad on said right of way, and from interfering with the plaintiff in the peaceable and exclusive possession and occupancy of said right of way; and that the title be decreed in the plaintiff as against the defendant. It therefore appears that this action is for a final judgment of injunction in favor of the plaintiff and against the defendant. An answer was interposed by the defendant, and upon issues framed the cause came on for trial. A preliminary injunction was granted in this cause, but was subsequently vacated upon motion. It appears from the findings in this case that, at the time of the trial thereof, the defendant had completed its line of road over the disputed ground, and was in the actual use and occupation of the same. The plaintiff, it would seem, had an adequate remedy at law, if its contention is correct, and the court below was right in refusing a judgment of perpetual injunction, as prayed for; but we think that the court should not, in that case, have passed upon the ownership and title of the premises in question, but should have left the plaintiff to his action at law. The judgment of the court below should be modified as we have stated, and, as modified, the same is affirmed, without costs to either party in this court or in the court below.

BERRY, J., Dissenting.—The plaintiff is a company duly created and organized under the laws of Washington territory for the purpose of constructing and operating a railway in Idaho territory, including on its line the premises more especially in question in this action. The defendant is also a company duly organized for a like purpose under the laws of the territory of Montana. Both parties began their survey of this section of their respective roads, as appears by the findings of

the court, on the same day (October 22, 1886), and completed their surveys—the plaintiff on the eighth day of December, 1886, and the defendant, on the fifth day of November, 1886. The plats of the respective roads were filed in the United States land office in said district—the defendant's on the eighth day of November, 1886, and the plaintiff's, December 23, 1886—and certified and approved by the commissioner of the interior, February 11, 1887. The plats in each case showed the center line of the route claimed by each, at point on the South Fork of the Cœur d'Alene river. The lines of the roads, as marked on the respective maps, diverge from each other as follows:

The plaintiff's line is marked "C," and the defendant's line is marked "B." The premises in controversy are from the point of crossing of these two lines "C" and "B" eastward up the stream a distance of about one and a half miles. The valley of the South Fork of the Cœur d'Alene river at this place is alleged by the defendant in its answer to be about eighty rods wide. The stream appears to run near the northern boundary of the valley. After the respective plats were duly approved and filed, July 11, 1887, the chief engineer of the defendant, George P. Jones, by a written notice, advised the plaintiff that it was the intention of the defendant to construct its said road "on its location as filed." It is also admitted by the defendant, and is part of the bill of exceptions allowed herein, that August 23, 1887, and before the defendant had begun work on the prem-

ises in question, the plaintiff delivered to the defendant the following notice:

"Engineer's Camp W. & I. R. R. Co.

"(July 13th), August 23, 1887.

"To George P. Jones, Engineer in charge, Cœur d'Alene Railway & Navigation Co.

"Dear Sir: You, and all parties in your charge, or in the employ of the Cœur d'Alene Railway and Navigation Company, are hereby notified that the Washington and Idaho Railroad Company, a corporation organized under the laws of Washington territory, and authorized to transact business in Idaho territory, has heretofore duly filed complete maps of its branch line from old Mission to Mullan, Idaho, under the act of Congress approved March 3, 1875, entitled 'An act granting right of way to railroads through the public lands,' and, having complied with the rules and regulations of the honorable department of the interior, the said maps were duly approved by the said department, and a right of way through the public domain secured by said company. Therefore you, and all servants and employees and privies of the Cœur d'Alene Railway and Navigation Company are warned to desist from occupying any portion whatever of the said Washington and Idaho Railroad Company's right of way as the same is staked out and surveyed, and as shown by its said maps now on file.

"THE WASHINGTON AND IDAHO RAILROAD CO.

"By W. H. BURRYS,
"Engineer in Charge."

That, after the interchange of notices, the defendant entered upon the route on plaintiff's map marked line "C," and was in process of constructing its road along said line "C" when this action for an injunction was begun.

The main question is as to which of these companies is the owner of this right of way at the place in dispute. Both companies claim it under the act of Congress of March 3, 1875, granting to railroads the right of way through the public lands.

of the United States.  Section 1 provides: "The right of way through the public lands of the United States is hereby granted to any railroad company duly organized under the laws of any state or territory, . . . . which shall have filed with the Secretary of the Interior a copy of its articles of incorporation, and due proofs of its organization under the same, to the extent of one hundred feet on each side of the central line of said road." Section 3 authorizes the territorial legislature to provide for the manner in which private lands, and possessory claims on public lands of the United States, may be condemned, etc.  Section 4: "Any railroad company desiring to secure the benefits of this act shall, within twelve months after the location of any section of twenty miles of its road, if the same be upon surveyed lands, and, if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the register of the land office for the district where such land is located a profile of its road; and, upon approval thereof by the Secretary of the Interior, the same shall be noted upon the plats in said office; and thereafter all such lands, over which such right of way shall pass, shall be disposed of subject to such right of way; provided, that, if any section of said road shall not be completed within five years after the location of said section, the rights herein granted shall be forfeited as to any such uncompleted section of said road."

This is not a grant to any particular railroad company, but it is an offer to all companies, otherwise entitled, which shall comply with the conditions of the act.  When complied with, it is only operative to the extent of one hundred feet on each side of the central line of said road, subject to the conditions that, if after such compliance the road shall not be built within five years, the rights granted shall be forfeited as to such uncompleted parts of said section.  The act of location must define the center of the right of way.  To every grant of this nature there must be two parties—the grantor and the grantee.  The United States is the grantor, and the company claiming is the grantee.  When the act has passed Congress, something else remains to be done.  The rights granted must be made definite, through the supervision and approval of the department of the interior.  That is the plain intent of the act, though the Sec-

retary of the Interior may not, by any merely captious refusal to approve a location, defeat the objects of the act. It is for the purpose of having the rights not only of applicants under the act defined, but also that ungranted privileges may be known, both to the United States' authorities and to other claimants, that the rules and regulations of the interior department of November 7, 1879, were adopted.

Rule 1, and all of its subdivisions, are merely directory, and as to what evidence the government will require as to the corporate existence of the claimants. Rule 2 prescribes that upon the location of any section of the line of route of its road, not exceeding twenty miles in length, the company must file with the register of the land district in which said section of the road, or greater portion thereof, is located, a map for the approval of the Secretary of the Interior, showing the termini of such portion of the road, its length, and its route over the public lands, according to the public surveys. The map must be filed within twelve months after the location of such portion of the road, if located upon surveyed lands, and, if upon unsurveyed lands, within twelve months after the survey thereof. This, too, is directory, and a condition on which the department will act. Rule 3 prescribes what acts are required before it will consider the location as fixed, as between the claimant and the government, and other claimants from the government. Rule 4: "Should the company desire to construct its road over lands prior to their survey, it must file, in manner as heretofore indicated, a map of its surveyed route, without waiting until the lands are surveyed, and, upon approval thereof, may proceed with construction; but, immediately on survey of the lands over which the road passes, the company must also file a map showing the line of route of its road over such lands, in order that the proper notes and records for the protection of its rights may be made." As this provision was fully and voluntarily acted upon and complied with by both companies in their dealing with the government, by each making a plat showing its line of route, obtaining it to be approved by the Secretary of the Interior, and filing it in the United States land office, perhaps nothing more need be here said of the right of the interior department to make this or any of these rules. Yet its valid-

ity is drawn in question by the findings of the court below, as being without authority. A grant shall be construed most favorably to the government. In such case the government is deprived of no power by implication. The question of its power to prescribe rules is not so much by what authority does the land department exercise this right, but rather how, if at all, has its exercise been denied. As we have seen, it is proper and necessary that the government shall always be apprised of the limits of an adverse right, or claim of right, and to this end it is proper that its construction of the law, as well as the conditions and limitations of its own acts of consent and approval, should be distinctly known. That, as I understand this rule, is precisely what it does. I do not concur with the court in Oregon in case of *United States v. Chaplin,* 31 Fed. 892, in which rule 4 is held to be without authority and void. It is precisely such apparent abuses of the privileges, under the act of March 3, 1875, as are there alleged (and by the demurrer admitted), which made such precautions on the part of the government necessary. Those rules do not pretend to create rights, nor to deny rights granted by Congress, but in this instance, at least, by exercise of a reserved and commonly exercised right of judgment, to put upon the completed compact the construction of the government. Such construction is the light by which the acts of the department are to be construed and understood. Reference to this right, in the head of the land department, is clearly implied in the act of Congress of March 3, 1875, in requiring acts making certain the claim of companies to be done subject to approval of the Secretary of the Interior. The rule is in the spirit of the law, and I think the court should not have pronounced it void, as for want of authority in the head of the land department to make it; in other words, I think he had such authority.

Rule 5. "Any variation within the limits of one hundred feet from the center line of the road, as located, will not be construed as a deviation from such line; but where, upon construction, it is found necessary to transgress such limits, in which the company has right of way, the company must at once file an amended map of right of way for approval." It is enough to say that a plat fixing the location of each line was

necessary, under the act and rules; that in view of that necessity, and for the express purpose of complying with the act, and also with such rules, a plat was made by each company, presented to the Secretary of the Interior for his approval, and by him accepted and approved, and filed by the company in the office of the register of the proper United States land office. These plats were so made, approved, and filed for the express purpose of fixing the respective lines, and such lines were thereby fixed, and made definite and certain. There can, I think, be no question of that. By rule 5, the government declared that one condition of its approval was that each party should be confined within one hundred feet of the center line so drawn. Both parties, and also the government, acted in view of the same statute and rules of the department. The plat of the plaintiff, being subsequent to that of the defendant, was rightfully made to cover the route which the defendant did not follow or touch; and such line, followed and appropriated by the plaintiff, is the identical line here in question. The plaintiff's selection was confirmed to it by the Secretary of the Interior, and the plaintiff became and was the owner of the right of way marked on the several plats line "C." But defendant avers that its line as platted and approved was made, by its own mistake, to cover the wrong line, and that it really meant to take the line covered by the plaintiff's route; that it surveyed three lines—one marked on the plat appended to its answer, and corresponding with the foregoing plat, as line "A," running south of the line in controversy about eight hundred feet; one marked on said plats line "B," and south of the plaintiff's line about five hundred feet; and one marked "C," which was the same as that selected by the plaintiff; and that by mistake of its engineer or maker of the plat line "B" was chosen instead of line "C"; and claims the right to correct its location, by changing its route from "B" to "C." There is no allegation or pretense that the plaintiff had anything to do with the defendant's plat, or with its selection or claim of lines, or that the land department ever had any information on the subject. Neither was the United States, or any officer of the United States, a party to this action, except that involved in its approval by the Secretary of the Interior; nor has there been any attempt to amend the defendant's

map of location. "No individual can call in question the va-
lidity of the proceedings by which precision is thus given to the
title where the United States are satisfied with them." (*Schulen-
berg v. Harriman,* 21 Wall. 62.)

Granting that the defendant did not in fact locate on the
line which it meant to locate upon, still, under the laws of Con-
gress, the rules of the department, on which all parties acted,
the rights so acquired by the plaintiff cannot be thus set aside.
Its rights were no longer inchoate, but had become fixed and
vested, and could not be devested but by its own act, or by
lapse of time. To do so would be merely to take the plaintiff's
property without compensation. Were this a canyon or pass,
where it were necessary that both roads should run over the
same ground, there are provisions under which both roads might
be permitted to occupy it. But this is not such a case, nor have
those means been attempted. Yet the court below adjudged
that line "C" was the true line of the defendant, and that the
right of way over the line in question belonged exclusively to
the defendant. This was error. But defendant still insists
that, granting the right of way to be in the plaintiff, still the
plaintiff was guilty of laches in not apprising the defendant of
its claim before the work was done, and that, therefore, the
plaintiff is estopped. The court below so holds. We think the
court in this was also in error. From the situation of the case
an estoppel does not arise. The defendant is presumed to know
its own route; having itself surveyed the middle route, made its
own plat, and procured that plat to be approved and filed in the
United States land office, as a notice to all others. But had it
been made by another, if the defendant did not know what it
contained, it might have known it by very slight diligence.
Again, the plat was a public record in the land office, in the vi-
cinity of this work; and it is hardly conceivable that the defend-
ant should not have referred to its own plat in so important a
matter as building a railroad. But it appears that before any
part of this work on the disputed line was performed, and on
the eleventh day of July, the defendant's chief engineer served
upon the plaintiff a notice that the defendant proposed to pro-
ceed with the construction of its road according to its own plat;
to which the plaintiff replied, referring to the plaintiff's maps,

and warning the defendant "to desist from occupying any part of the plaintiff's line, as the same is staked out and surveyed, and as shown by its maps now on file." This, with the facts above mentioned, was certainly sufficient to call attention to the record of the location, and to repel any presumption of laches on the part of the plaintiff from mere silence or inaction. The plaintiff is not estopped in such case from asserting its claim to its own right of way.

There are other errors assigned, but, from the view I take of the foregoing, it is unnecessary to review them. It is claimed by a majority of the court that this judgment may be modified so as to avoid the error in the rulings, findings, and judgment in the court below; by denying the injunction prayed for; and leaving all questions of the right of the plaintiff to the ownership of the right of way to be determined in another action. But that cannot be done. This court has jurisdiction of the action for that purpose with the others, and the plaintiff demands an adjudication of its rights in this action. It is not competent for the court to deny such determination, nor was the case tried with such end in view. The judgment in the court below should be reversed and the case remanded.