No. 24,931.

ELMER L. STONE, a Minor, by FRANK STONE, his Guardian and Next Friend, *Appellee*, v. THE CITY OF PLEASANTON, *Appellant*.

SYLLABUS BY THE COURT.

1. EVIDENCE—*Deposition Properly Taken and on File One Full Day Before Trial Admissible.* Under section 359 of the code of civil procedure, a deposition, properly taken, may be read in evidence when it has been on file one full day before the day of trial, although not one full day before the day on which the case was set for trial.

2. NEGLIGENCE — *Injuries — Contact With Guy Wire — Admission of Photographs in Evidence—No Error.* In a personal-injury case, a judgment for the plaintiff will not necessarily be reversed for error in receiving in evidence photographs of the wounds of the plaintiff taken a few days before the trial where the scars and wounds are exhibited to the jury on the trial.

3. SAME — *Notice of Defective Electric Light Wires — Admissions by the Mayor Admissible After His Death.* In an action against a city for damages caused by coming in contact with defective electric light wires owned by the city, admissions by the mayor of the city that he knew of the defective condition of the wire may be proved against the city after his death.

4. SAME—*Competent Evidence.* Evidence is competent where it tends to show that a guy wire, attached to a pole carrying high-voltage wires, had no strain insulator in it.

5. SAME—*Evidence—Burned Clothing of Plaintiff Admissible.* The burned clothing of a person injured by coming in contact with a wire charged with electricity may be introduced in evidence.

6. SAME—*Excluded Evidence to Be Reviewable Must Be in the Record.* Excluded evidence must be put in the record on the motion for a new trial, before it can be made a ground for reversing a judgment.

7. SAME—*Right of Persons to Use Any Portion of Public Street.* A city cannot, by negligently maintaining electric light wires in a dangerous condition, deny to persons the right to use any portion of a street open for public travel.

8. SAME—*City Obligated to Use Highest Degree of Care in Making Its Lighting System Safe for All.* A city owning and operating an electric lighting system within its limits is under obligation to use the highest degree of care, including insulated wires where necessary, in making the lighting system safe for all in the city.

9. SAME—*No Excuse for Not Using Highest Degree of Care.* The cost of insulated wire is no excuse for not using it.

10. SAME—*Instruction Relative to Defective Condition of Guy Wire Correct.* An instruction in regard to permitting a guy wire attached to an electric light pole to remain in a defective condition correctly stated the law.

11. Same—*Opening Statement of Attorney—Not Reversible Error.* Remarks of an attorney for the plaintiff in his opening statement to the jury do not appear to have been sufficiently prejudicial to warrant a reversal of the judgment.

12. Same—*Requested Instructions Properly Refused.* It is not error to refuse to give requested instructions stating the law of contributory negligence where that law is correctly given in other instructions.

13. Same—It is not error to refuse to give a requested instruction which fails to mention an important fact necessary to be considered in connection with the matters set out in the instruction.

14. Same—*Remarks of Plaintiff's Attorney in Closing Argument Not Reversible Error.* Remarks of the attorney for the successful party in the closing argument to the jury, do not appear to have been sufficiently prejudicial to warrant a reversal of the judgment.

15. Motion for New Trial—*Objection to Evidence of Juror Properly Sustained.* On the motion for a new trial, the defendant put a juror on the witness stand and asked him the following question:

"Was it considered, in your determination of this matter, that the defendant was a city and that no one person would have to pay much of any judgment or any amount that would be rendered as a judgment in this matter?"

*Held,* that it was not error to sustain an objection to the introduction of the evidence.

16. Same—*Evidence Offered to Impeach Verdict Properly Refused.* After a motion for a new trial has been argued and taken under advisement until a future day this court cannot say that it was error for the court to sustain an objection to an offer of further proof by a juror attacking the verdict rendered, it not appearing that the juror was then present or that his or any other affidavit was offered in evidence.

17. Excessive Verdict—*Remittitur.* The verdict was excessive. The verdict and judgment are reduced, if the plaintiff will accept the amount named. If he refuses, a new trial is directed.

Appeal from Linn district court; Edward C. Gates, judge. Opinion filed February 9, 1924. Modified.

*A. M. Kent,* of Pleasanton, *W. P. Dillard,* and *Harry W. Fisher,* both of Fort Scott, for the appellant.

*John A. Hall,* of Pleasanton, for the appellee.

The opinion of the court was delivered by

Marshall, J.: The plaintiff, a boy thirteen years old, recovered a judgment for $19,000 for injuries received when he came in contact with a live electric light wire operated by the defendant. The defendant appeals.

Part of the electric light system consisted of a pole on which were strung several bare electric light wires carrying 2,300 volts of electricity. To the top of the pole a guy wire had been attached and fastened to a near-by tree. The tree was cut down about four months before the plaintiff was injured, and the guy wire was left hanging from the top of the pole to the ground where part of the wire lay in a coil at the foot of the pole. The plaintiff in some way not shown by the evidence came in contact with the guy wire and received severe injuries, for which he obtained the judgment.

1. Complaint is made of the refusal of the court to suppress the deposition of Samuel Tucker. It is urged that the deposition had not been on file a sufficient length of time before the trial. Notice to take the deposition was served on September 13, 1922. The deposition was taken on September 16, 1922, and was delivered to the clerk of the district court of Linn county, in Pleasanton, on that day, which was Saturday. The county seat is at Mound City, a number of miles away. The cause was set for trial on September 18, but the trial was not begun until on September 20, 1922. The defendant contends that the deposition could not have been filed until September 18.

Section 359 of the code of civil procedure reads:

"Every deposition intended to be read in evidence on the trial must be filed at least one day before the day of trial." (R. S. 60-2844.)

The argument of the defendant is that the statute requires the deposition to be filed at least one day before the day on which the cause is set for trial. That is not what the statute says. It says one day before the day of trial. Admitting that the deposition was filed on September 18, the trial did not begin until September 20. One full day intervened between the day on which the deposition was filed and the day on which the trial began. That satisfied the statute.

2. Photographs of the wounds of the plaintiff were introduced in evidence. Those pictures were made a few days before the trial. The plaintiff was in court, and his body was shown to the jury. The defendant objected to the introduction of the photographs and argues that they were incompetent and that they prejudiced the jury. The boy was injured April 8, 1921. No other photographs were introduced in evidence. Probably the photographs of the boy's injuries were not the best evidence, but the best evidence, the boy's body, was seen by the jury, and the fact that secondary evidence

of those wounds was also introduced did not prejudice the defendant.

3. The defendant complains of the introduction of certain evidence. Julius Gottlieb was mayor of Pleasanton when the plaintiff was injured and died shortly thereafter. Evidence was introduced tending to show that Gottlieb had stated before his death and after the plaintiff was injured that he knew that the guy wire on which the plaintiff was injured was down.

This language is found in 22 C. J. 392:

"Public corporations, such as counties, cities, or towns, may be affected by declarations of public officers within the scope of their authority, although a somewhat stricter proof of authority is required than in the case of private corporations, by reason of the fact that the officers of public corporations are regarded as public officials rather than mere agents."

There was evidence which tended to show that the wire had been down from in December, 1920, to April 8, 1921. That, of itself, was sufficient to warrant the jury in finding that the city had knowledge that the wire was down. In addition to the evidence tending to show that the guy wire was down from December to April, there was evidence which tended to show that the mayor, on the day that the tree was cut down, was notified of the fact that the guy wire had been cut from the tree and was on the ground. For these reasons, evidence of the statements of the mayor, even if they were incompetent, cannot be said to have been prejudicial.

4. The defendant says—

"Plaintiff was further permitted to offer evidence that this guy wire had no strain insulator in it and the court instructed the jury that it was negligence in the defendant to maintain the wire without a strain insulator in it.

"Plaintiff was further allowed to introduce testimony to the effect that it was bad practice to maintain a high voltage wire on any bracket attached to a pole. It is contended by the appellant that these were all questions of fact for the decision of the jury and that it was error in the court to instruct peremptorily the jury that a failure to do these things was negligence upon the part of the defendant."

The evidence was competent for the purpose of assisting the jury in reaching correct conclusions concerning the matters that were in issue. The instructions of which complaint is made in connection with that evidence will be noticed hereafter.

5. The burned clothing worn by the plaintiff at the time he was injured was introduced in evidence. It is contended that this was improper because the boy was in court, was required to remove his

clothing and showed his injuries to the jury. It probably was unnecessary to introduce the burned clothing, but the court does not see any reason why it should be held that such evidence was incompetent.

6. The defendant complains because it was not permitted to introduce evidence to show that Julius Gottlieb had stated that he knew nothing about either the existence or the condition of the guy wire. The excluded evidence was not produced on the hearing of the motion for a new trial. For that reason, even if it were error to exclude the evidence, this court cannot reverse the judgment. (Civ. Code, § 581, R. S. 60-3317.)

Besides this, the circumstances were such that the jury would have been almost compelled to find that the city knew of the dangerous condition although all the living city officers testified that they knew nothing about it. Under the circumstances, their lack of knowledge would have justified the jury in finding negligence on the part of the city. Ignorance of conditions may be negligence.

7. Complaint is made of the following instruction:

"You are instructed that plaintiff at the time and place in question was not required to keep upon the sidewalk, but had the right to use the sidewalk or any other portion of the street he so chose to do."

From what appears in the record, it may be assumed that the entire street was open for travel. In such event, the instruction was entirely correct. In any event, the city could not stop travel on a street by negligently maintaining electric light wires in a dangerous condition. The instruction was not erroneous.

8. It is argued that the 13th and 14th instructions given by the court were prejudicially erroneous. Those instructions do not give an erroneous statement of the law. They in effect say that the defendant was bound to exercise the highest degree of care and the utmost caution for the safety of the public, including children, and that it was the duty of the defendant, in exercising that care and caution, to insulate its wires. That is the law. (*Snyder v. Light Co.*, 98 Kan. 157, 157 Pac. 442, and authorities hereinafter cited.)

9. The 15th instruction is complained of. That instruction reads:

"You are instructed that because it may be expensive to keep and maintain wires reasonably guarded, insulated and protected is no excuse for the defendant permitting them to be maintained in an unguarded, unprotected and uninsulated condition."

This instruction should be read in connection with the 13th and 14th instructions, which were discussed under the previous head. The 15th instruction also correctly stated the law.

10.  Complaint is made of the 16th instruction, which reads:

"If you find from the preponderance of the evidence that the defendant knew or by the exercise of ordinary care could have known, that said guy wire or cable attached to the electric light pole was hanging from said pole with one end loose on the ground in or near a traveled street and that the upper part of said guy wire or cable was in close proximity to an uninsulated electric light wire carrying approximately 2,300 volts of electricity so that by moving the lower part of said guy wire or cable, said guy wire or cable would come in contact with said electric wire carrying said voltage, said defendant with such knowledge, actual or constructive, suffered or permitted said guy wire to remain in such position and condition after having had a reasonable time to change and remedy such condition, and thereafter, said plaintiff without contributory negligence on his part, as defined herein, came in contact with said guy wire or cable and suffered injury thereby, the defendant would be liable to him, and your verdict should be for plaintiff."

None of the argument of the defendant is directed specifically to this instruction, and the court is not directed to any particular error in it.  After an examination of it, the court is unable to find any error in it.  It states the law correctly.

11.  Complaint is made of remarks made by the attorney for the plaintiff in the opening statement to the jury.  Those remarks concerned the injuries that had been received by the plaintiff, and the attorney for the plaintiff, during his opening statement, removed some of the clothing of the plaintiff and exhibited some of the boy's wounds and scars to the jury.  That was improper; the exhibition of the boy's wounds and scars should have been deferred until the introduction of the evidence, but wherein a premature exhibition of those wounds and scars prejudiced the defendant is not apparent. The error was not sufficient to justify this court in reversing the judgment.

12.  Complaint is made of the refusal of the court to give requested instructions numbered 3, 4, 5, and 6.  They concerned contributory negligence on the part of the plaintiff.  The court correctly instructed the jury concerning that matter and it was not necessary to give the instructions requested by the defendant.

13.  The defendant requested the following instruction:

"You are instructed that there was no law or ordinance requiring the insulation of the high voltage wires carried upon the pole at the point alleged in the plaintiff's petition.  But the question as to whether it was negligence

upon the part of the defendant to maintain such wires in an uninsulated condition is a question of fact to be determined by the jury from all the evidence in the case."

There may not have been any law or ordinance requiring insulation on high voltage electric light wires carried on a pole in the city, but there was a law making the city liable for injuries received by a boy on coming in contact with a guy wire negligently permitted to hang to the ground from the top of an electric light pole which supported uninsulated, highly charged electric light wires.' (*Kansas City v. File*, 60 Kan. 157, 55 Pac. 877; *Kansas City v. Gilbert*, 65 Kan. 469, 70 Pac. 350; *Snyder v. Light Co.*, 98 Kan. 157, 157 Pac. 442; *Lewis v. Street Railway Co.*, 101 Kan. 673, 168 Pac. 856; *Storm v. Light Co.*, 102 Kan. 40, 169 Pac. 556; Note 17 A. L. R. 839.) The requested instruction omitted all reference to the hanging guy wire. It caused the accident by being in contact with the live wire. It was an important fact necessary to be considered in connection with the matters set out in the instruction requested. No error was committed in refusing to give the instruction.

14. Another matter urged is—

"The misconduct of attorney for plaintiff in his closing argument and the refusal of the court to sustain objections of defendant to prejudicial statements and to instruct the jury to disregard the same."

We quote from the abstract as follows:

"By W. P. Dillard: In the course of the argument for the plaintiff, by his attorney, the attorney was proceeding to ask the jury what they would want one of their boys to suffer such an injury for, and thereupon, the defendant by its attorneys, objected and asked the court to instruct the jury that it was not a proper argument, which objection' was overruled.

"By John A. Hall: I would like to repeat as nearly as I can, what I said, 'I think it is fair for you to consider it as it' would appear to you if there was a boy of your own family or even one of your own boys, that was in that kind of a situation.'

"By W. P. Dillard: Object to that as improper argument and I ask you to so instruct the jury.

"By the Court: Overruled."

That argument may have been improper. The court does not say that it was, but, even if it were, it can hardly be said to have been prejudicial and is not sufficient cause to justify, let alone compel, a reversal of the judgment.

15. The defendant urges misconduct of the jury as a ground for a new trial. We quote from the brief of the defendant:

"Upon the hearing of the motion for a new trial the affidavit [evidence] of one of the jurors was offered by defendant to the court below showing these facts. The court refused to hear the evidence and thereby we maintain committed reversible error."

On October 16, 1922, the juror was on the witness stand on the hearing of the motion for a new trial. He was asked the following question:

"Was it considered, in your determination of this matter, that the defendant was a city and that no one person would have to pay much of any judgment or any amount that would be rendered as a judgment in this matter?"

An objection to that question was sustained.

In *L. & W. Rly. Co. v. Anderson*, 41 Kan. 528, 21 Pac. 588, the court said:

"What is done in the jury-room, and what is known to all the jury to exist, and what relates to matters not connected with their individual consciences in arriving at or determining their verdict, may be testified to by a juror; but where it is sought to show the reasons for a verdict, or any of the elements that go to make up a verdict, . . . these are beyond the province of inquiry." (Syl. ¶ 2.)

In *The State v. Taylor*, 90 Kan. 438, 446, 133 Pac. 861, the following language was used:

"Upon a motion for a new trial an effort was made in behalf of the defendants to require the jurors to testify as to the considerations by which the jury were influenced in arriving at their verdict. Objections to the questions were rightly sustained on the ground that they related to matters essentially inhering in the verdict itself. (*L. & W. Rly. Co. v. Anderson,* 41 Kan. 528, 21 Pac. 588; *The State v. Keehn,* 85 Kan. 765, 779, 118 Pac. 851.)"

What the defendant then sought to prove entered into the verdict and was incompetent.

16. The verdict of the jury was returned on September 22, 1922. The motion for a new trial was argued on November 10, 1922, and was taken under advisement until November 17, 1922. On November 10, 1922, the defendant made the following offer of proof:

"The defendant offers to show the court upon a motion for a new trial in this case, that the juror Stites would testify and would have testified at the time he was examined on October 16th, 1922, that after the jury retired to their room to consider their verdict in this case, that it was stated by two or three of the jurymen to the balance that the jury ought to do something handsome for this boy, that it was a boy against a city and that any judgment would have to be paid by the city at large and that it would not fall hard upon any one individual, that it was a boy against a city and that the boy should have the long end of the doubts involved, that it was a boy against a city and

that they, the individuals, were in for giving the boy the advantage of the matter."

An objection to the "consideration of that offer at this time" was sustained. The offer came too late. It does not appear that the juror was present, nor that any attempt was made to use his or any other affidavit. It was discretionary with the court to hear evidence at that time. It was not error to sustain the objection to the offer of proof.

17. It is urged that the verdict was excessive. As a result of the injuries received by the plaintiff, one of his arms was amputated between the elbow and the wrist; a large scalp wound was received on which the hair cannot grow again; and he received a large burn on one of his shoulders and another large one on one of his legs. There was evidence which tended to show that 216 square inches of skin were taken from ten other boys and grafted on the plaintiff. But the court is of the opinion that the verdict was excessive.

Because the verdict was excessive, the judgment is reduced to $15,000 if the plaintiff will accept that amount. If he declines, a new trial is granted.