No. 28,208.

J. H. SKAER, *Appellee*, v. THE AMERICAN NATIONAL BANK OF AUGUSTA et al., *Appellants*.

(275 Pac. 185.)

Opinion on rehearing filed March 9, 1929. (For original opinion of affirmance, see 126 Kan. 538, 268 Pac. 801.)

*T. A. Noftzger, George W. Cox, W. J. Masemore* and *Lawrence Weigand,* all of Wichita, for the appellants.

*C. W. McVickers* and *Arch F. Williams,* both of Wichita, for the appellee.

*Chester I. Long* and *Austin M. Cowen,* both of Wichita, as *amici curiæ.*

The opinion of the court was delivered by

MARSHALL, J.: An opinion was filed in this action by this court on July 7, 1928 (*Skaer v. American National Bank,* 126 Kan. 538, 268 Pac. 801). On the motion of the appellants, a rehearing was granted. The cause has been reargued and again submitted. The former opinion and the order thereon are set aside. In order that those interested in reading this opinion may understand the issues, the evidence, and the propositions submitted to the court for determination, the entire cause is restated.

The plaintiff commenced this action to enjoin the American National Bank of Augusta and L. L. Wilson, its director and liquidating agent, from selling, or attempting to sell, a promissory note signed by the plaintiff for $2,600, payable to the bank and to cancel the note and hold it for naught. Judgment was rendered in favor of the plaintiff, and the defendants appeal.

The petition alleged that the note had been paid; that it had been given without any consideration therefor; that it had been given for the accommodation of the American National Bank; and that the signature thereto had been procured by fraud. The answer denied the allegations of the petition.

There was evidence which tended to prove the following facts: That on October 23, 1919, the plaintiff J. H. Skaer and M. T. Moyle executed a note to the American National Bank for the sum of $3,500; that on August 9, 1922, the plaintiff, in renewal of the $3,500 note, executed a new note to the American National Bank in the sum of $3,000; that on April 21, 1923, the plaintiff, in renewal of the $3,000 note, executed another note to the American National Bank in the sum of $3,000; that on February 21, 1924, the plaintiff, in

renewal of the last $3,000 note, executed another note to the bank in the sum of $2,600, the subject of this controversy; that one J. W. LePorin was cashier of the bank when the $3,500 note was given and when each of the $3,000 notes was given; that when the $2,600 note was given a Mr. Varner was cashier of the bank; that A. W. Skaer, a brother of the plaintiff, was a stockholder in the bank and part of the time was an officer in it; that J. H. Skaer was a stockholder in the bank; that J. W. LePorin, A. W. Skaer, M. T. Moyle, and the plaintiff with others were interested in an oil company operating in Texas; that when the $3,500 note was signed the American National Bank advanced to that oil company, an Oklahoma corporation, the proceeds arising from the note; that at the time the first $3,000 note was given to renew the $3,500 note, the latter had been paid by deducting the amount thereof from the account of the wife of A. W. Skaer.

We quote from the testimony of the plaintiff as shown by the abstract of the appellants as follows:

"I recall having a conversation with Mr. LePorin while he was cashier of the American National Bank with reference to this $3,500 note and renewing it. Well, it was about this time, so far as I remember, that this note was signed.

"Counsel for plaintiff: I mean the $3,000 note, the second note.

"At the time I signed the $3,000 note, this $3,000 note that has just been introduced, I was in the bank and Mr. LePorin says to me, 'John, we haven't taken up that other note yet,' and he says, 'I would like awfully well for you to accommodate me and sign this $3,000 note,' and he said—I said, 'Matt Moyle probably won't sign that when he comes back,' and he said, 'He will sign it,' and I said, 'Will you see that he signs it,' and he said, 'I sure will,' and he says, 'We've got stuff to sell and it will be taken up,' and under those conditions—well, I says, 'Will I ever have to pay it?' 'Why, no,' he says. I did not receive any money or other consideration from the bank or from LePorin at the time I signed this note. The $3,500 note was not delivered to me at that time."

There was evidence which tended to prove that each of the four notes was given for the accommodation of the American National Bank. There was also evidence which tended to prove that the $3,500 note and each of the $3,000 notes was given for the accommodation of J. W. LePorin and of the oil company; that J. H. Skaer did not receive anything for himself when he signed the $3,500 note; that he did not receive the $3,500 note when he signed the first $3,000 note, but afterward did receive it; that he received the first

$3,000 note when he signed the second one of that amount; and that he received the last $3,000 note when he signed the $2,600 note; and that he did not receive anything else when the last three notes were signed.

Summarizing what has been said, there was evidence which tended to prove that the plaintiff did not receive any consideration for the notes signed by him; that the renewal of the $3,500 note had been procured by fraud; that the $3,500 note had been paid when the first $3,000 note was given; and that all of the notes were accommodation notes so far as the plaintiff was concerned.

1. The defendants urge that the court committed error in giving instruction No. 3. That instruction read as follows:

"3. You are further instructed that J. H. Skaer admits execution of the $2,600 note, but alleges as a defense that he executed the same as an accommodation to the parties only, and the same was without consideration; and that said note has been paid. The burden of proof is upon J. H. Skaer to establish one or more of said defenses by a preponderance of the evidence and if he does establish one or more of said defenses by a preponderance of the evidence then your verdict must be in his favor; on the other hand, if he fails to so establish one or more of his defenses then your verdict must be for the American National Bank of Augusta, Kansas.

"In this connection you are instructed that every negotiable instrument is deemed *prima facie* to have been issued for a valuable consideration and every person whose signature appears thereon to have become a party thereto for value. Value is any consideration sufficient to support a simple contract. An antecedent or preëxisting debt constitutes value and is deemed such whether the instrument is payable on demand or at a future time.

"An accommodation party is one who has signed the instrument as maker, drawer, acceptor or indorser without receiving value therefor, and for the purpose of lending his name to some other person.

"Consideration is any benefit, profit or advantage to the promisor or any loss, detriment, or inconvenience to the promisee, and if there is no benefit or the like on the one side or detriment or the like on the other side then there is no consideration."

It is argued that the instruction was "misleading, ambiguous and prejudicial to the defendant." It is urged that the first paragraph of this instruction should have specified who was meant by the word "parties" in the expression "accommodation to the parties." The instruction would have been correct if instead of saying "accommodation to the parties" it had said "accommodation to the bank." There was evidence which tended to prove that the bank gave ample consideration for the note and that it was not given

for the accommodation of the bank. If that evidence was true the instruction was erroneous so far as the bank was concerned.

Section 52-303 of the Revised Statutes reads:

"Where value has at any time been given for the instrument, the holder is deemed a holder for value in respect to all parties who became such prior to that time."

If the bank gave value for that note the plaintiff was liable thereon notwithstanding the fact that it may have been given for the accommodation of J. W. LePorin or of the oil company. The instruction was misleading and erroneous. .

2. The defendants argue that the court committed error in refusing to give the following instruction requested by them:

"You are instructed that an accommodation party is one who has signed an instrument as maker, acceptor or indorser without receiving value therefor, and for the purpose of lending his name to some other person. But an accommodation party is liable on the instrument to the holder for value notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."

The first sentence of the requested instruction was given, but the last sentence was not. The instruction requested stated the law correctly so far as it went, but it did not go far enough to justify the court in giving it to the jury. It should have defined a holder for value and should have declared his rights as such and the liability of the plaintiff as an accommodation maker of the note if the jury should find that he was such an accommodation maker. The requested instruction would have permitted the jury to determine who was a holder for value. That was a question of law that should have been stated in the instruction.

In *Douglas v. Wolf*, 6 Kan. 88, this court said:

"The district court is not required to give instructions which need limitations and qualifications to make them applicable to. the case. Instructions must be good as asked, or it is not error to refuse them." (Syl. ¶ 2.)

The first sentence of that language was repeated in *Condiff v. K. C. Ft. S. & G. Rld. Co.*, 45 Kan. 256, 25 Pac. 562.

In *Stone v. City of Pleasanton*, 115 Kan. 378, 223 Pac. 312, this court said:

"It is not error to refuse to give a requested instruction which fails to mention an important fact necessary to be considered in connection with the matters set out in the instruction." (Syl. ¶ 13.)

In *Kansas Ins. Co. v. Berry,* 8 Kan. 159, this court said:

"If an instruction as asked is not correct as an entirety, the court is not bound to correct it, but may reject it altogether." (Syl. ¶ 5.)

In *Dickson v. Randall,* 19 Kan. 212, 214, this language is found:

"An instruction must be good as asked, or it is not error to refuse it."

See, also, *State v. Perkins,* 112 Kan. 455, 457, 211 Pac. 139, and *Stone v. City of Pleasanton,* 115 Kan. 378, 223 Pac. 312.

The court of its own volition could have defined a holder for value, but no complaint is made of the failure of the court so to do.

Because the instruction requested did not state the law as it should have been given to render it applicable to the issues on trial in the present action, there was no error in refusing to give it.

3. It is argued that the court committed error in giving instruction No. 4. That instruction concerned false representations alleged to have been made to secure the plaintiff's signature to the notes. The evidence concerning the representations made to the plaintiff when the first $3,000 note was signed has been set out; that evidence was sufficient to justify the court in giving the instruction because the representations made affected each of the succeeding notes.

The judgment is reversed, and a new trial is directed.

HARVEY, J. (concurring specially): I concur in the judgment of reversal and in the holding of the court that instruction No. 3 was erroneous. However, I find no evidence in the record tending to show that the bank was the accommodated party to this note. It seems clear that the first note given was for money borrowed from the bank for the use of the oil company, in which the makers of the note were interested. That was simply an ordinary loan by the bank to the makers of the note to use the money in the way they wanted to use it. This transaction did not make the bank the accommodated party within the meaning of R. S. 52-306, and the jury should have been so told specifically in the instructions. Now, if this original note had been paid at the time the first $3,000 note was given—a question on which I think the record is not clear—then the fact that the officers of the bank procured the $3,000 note (and subsequent renewals of it) to be given on the false representation that the original note had not been paid, would constitute such fraud as might avoid the note. But if the bank secured the note by the

fraudulent representation of its officers, that is a thing distinct from procuring it for the accommodation of the bank, and that should have been made clear to the jury in the court's instructions.

JOHNSTON, C. J., and BURCH, J., join in this special concurrence.