No. 29,055.

Doris Richardson, *Appellee*, v. Business Men's Protective Association of Lincoln, Nebraska, *Appellant.*

(284 Pac. 599.)

Opinion filed February 8, 1930.

*Robert Garvin* and *Evart Garvin,* both of St. John, for the appellant; *Good, Richardson & Good,* of Lincoln, Neb., of counsel.

*William Barrett* and *George Barrett,* both of Pratt, for the appellee.

The opinion of the court was delivered by

Harvey, J.: This is an action on what is commonly known as an accident insurance policy. The jury answered special questions and returned a verdict for plaintiff. Defendant has appealed, and complains that the court erred in giving certain instructions, in excluding evidence offered, and in refusing to grant a new trial.

The plaintiff is the beneficiary named in the policy and was the wife of Raymond R. Richardson, to whom the policy was issued. The insured sustained injuries by accident which resulted in his death. The policy was in full force at that time. The policy contained the provision:

"This policy does not cover death, disability, or other losses . . . received . . . while under the influence of any liquor or any narcotic."

The defense was that the insured was under the influence of intoxicating liquor at the time he received the injury by accident which resulted in his death.

Raymond R. Richardson and his wife lived near Stafford, Kan. On Sunday afternoon, December 4, 1927, they, with seven friends from their neighborhood, drove from Stafford to Hutchinson, Kan., in two automobiles, one of which was driven by Richardson and the other, a Buick coupé with a rumble seat, was driven by Victor McMillan. They reached Hutchinson sometime after dark. The lights on the Richardson car were giving trouble and it was taken to a garage, where it was left for the evening. All nine of the members of the party got in or on the McMillan car and drove about the streets of Hutchinson. Seven of the persons were in the seats of the car. Richardson was riding on the running board and rear fender on the left side of the car and one other person in a similar position on the right side of the car. The party left the garage about 9 or 9:30 o'clock. Shortly before 11 o'clock the accident occurred which caused Richardson's death. In Hutchinson, Fourth street is an east-and-west street on which there is a street-car line. The automobile on which Richardson was riding was going west on Fourth street, with the left wheels south and the right wheels north of the north rail of the street-car track. A street car was approaching from the west. The driver of the automobile turned to the right to get off the street-car track, but did not do so soon enough. The automobile struck the northeast corner of the street car, Richardson was knocked off, and sustained severe injuries, from which he died. Persons in the street car and others carried Richardson to the parking, an ambulance was called, and he was taken to the hospital, where his injuries were cared for. He was given an anæsthetic and operated upon about 1 o'clock and died about 6 o'clock in the morning. The car on which Richardson was riding at the time of his injuries stopped a half block or more west of the place of the collision. There is evidence that two of the men of the party went

back to where Richardson was and stayed with him until after he got to the hospital. The other members of the party, after making arrangements to get their car taken to a garage for repairs, went to a hotel. Richardson's wife went to the hospital about 1 o'clock. With respect to whether Richardson was under the influence of intoxicating liquor at the time of the accident, a number of witnesses who cared for him until the ambulance came testified that there was a strong odor of whisky or alcohol on his breath, although the person in charge of the ambulance which took him to the hospital testified: "I smelled the deceased's breath. I smelled perfume on the young man, and toilet water, but I didn't smell any liquor directly." The nurses who cared for him when he was first taken to the hospital testified that they smelled alcohol or whisky on his breath, and from his vomit. Whether he vomited before or after the operation for which an anæsthetic was given is not clear from the record. The doctor who operated on him from about 11:30 to 12:45 did not testify to any alcoholic odor from his breath, or other evidence of his intoxication. In the McMillan car, after the accident and when it was taken to the garage, were found several empty bottles which, from the odor, had recently contained whisky. One of these was in the rumble seat and one or more in the front seat. There was also vomit on the windshield and the inside of the car and on the outside of the door. Defendant offered to show that when members of the party went to the hotel between 12 and 1 o'clock, after the accident, to engage a room, they appeared to have been drinking, and at least two of them were so drunk that they couldn't make change to pay for the room. This evidence as to the condition of members of the party other than the insured was excluded. There was evidence, also, that when the party was at the garage, and left there about 9 or 9:30 o'clock, there was no indication that any of the members of the party were drinking, or were to any extent under the influence of intoxicating liquor. There was also evidence from some of the members of the party that Richardson had not been drinking at any time before the accident.

In answering special questions the jury found that there was an odor of alcohol on the breath of the insured immediately after the accident and while he was at the hospital and in his vomit there. The jury also found that at the time of the injury which caused his death the insured was not under the influence of liquor.

Respecting the specific issues submitted to the jury the court

gave the following instructions. (We italicise the parts of instructions 7 and 8 now complained of):

"5. . . . so the only question the jury is called upon to decide is whether or not the said Raymond R. Richardson was under the influence of intoxicating liquor at the time of said injuries; and the burden of proof in this respect is upon the defendant.

"6. Now if the defendant has proven to you by a preponderance of the evidence in this case that the said Raymond R. Richardson was under the influence of intoxicating liquor at the time he was injured, then the plaintiff would not be entitled to recover in this action. On the contrary, if the defendant has failed to establish by a preponderance of the evidence that the said Raymond R. Richardson was under the influence of intoxicating liquor at the time he sustained said injuries, then the plaintiff would be entitled to recover in this action the sum of fifty-five hundred dollars with interest thereon at the rate of 6 per cent per annum from April 5, 1928.

"7. The policy of insurance in this case provides, in substance, that no recovery can be had thereunder for injury sustained while the insured is under the influence of any liquor. Now, in this connection, I instruct you that before the defendant insurance company can avoid the policy on that ground, it must appear that the insured was under the influence of liquor at the time he was injured to a degree that substantially impaired his judgment in the exercise of the faculties essential to his safety, *and made him irresponsible for his acts.*

"8. I further instruct you that in order to establish the defense that the said Raymond R. Richardson was under the influence of intoxicating liquor, it is necessary for the defendant to show more than that he had taken a drink or drinks of intoxicating liquor, but the defendant must go further and show that he was under the influence of intoxicating liquor; that it had taken possession of him; and that it was such a possession as affected substantially his actions and doings at the time of the injury, *and that it must have affected him to such an extent that the jury can say he was not responsible for his acts.*

"It is not necessary, however, that defendant company should show that the accident resulting in the death of Richardson was the result of, or had any connection with, such condition of being under the influence of intoxicating liquor; it is sufficient that the defendant shall show that the said Raymond R. Richardson, at the time of the injury which resulted in his death, was under such influence. This the defendant must show by a preponderance of the evidence; and if it does so show, your verdict will be for the defendant.

"9. You are instructed that if you believe from the evidence that Raymond R. Richardson sustained an injury while under the influence of any intoxicating liquor, on December 4, 1927, said injury resulting in the death of said Richardson, then your verdict should be for the defendant."

No complaint is made of instructions 5, 6 and 9, nor of any portion of instructions 7 and 8 except the words which we have had printed in italics. Appellant contends that these words placed too

heavy a burden on defendant. We agree with this contention. In 4 Joyce on Insurance, 2d ed., p. 4338, the rule is thus stated:

"If insured becomes intoxicated to such an extent as to impair his ability to care for himself, and thus increase the probability of his suffering accidental injury, it constitutes intoxication within the meaning of an accident policy clause limiting insurer's liability in case insured is injured while 'insane, delirious, or under the influence of any intoxicant or narcotic.'"

This rule appears to be a correct deduction from *Bakalars v. Continental Casualty Co.*, 141 Wis. 43; *Robinson v. Hawkeye Com. Men's Assn.*, 186 Ia. 759. Other cases treating varied wording of policy clauses on the subject are collected in the notes of 15 L. R. A., n. s., 206; 25 L. R. A., n. s., 1241; and 37 A. L. R. 356. See, also, 1 C. J. 457 and cases there cited, and 14 R. C. L. 1225.

These authorities support the view, in actions on accident insurance policies containing a provision like, or similar to, the one in the policy which forms the basis of this action, that degrees of being "under the influence of liquor" are recognized, and that the language just quoted should be given the same meaning as though the word "intoxicated" or "drunk" had been used, giving to those words the common meaning ordinarily attributed to them, and that the provision of the policy is available as a defense only when it is shown that the insured was at the time of the accident intoxicated or drunk to the extent or degree that it impaired his ability to care for himself, thus increasing the probability of his suffering accidental injury. Appellant concedes the correctness of the rule just stated, and hence makes no complaint of the instructions to the extent they embody it, but contends that when to that the court added "and made him irresponsible for his acts," in instruction 7, and a similar phrase in instruction 8, it went much beyond the rule of law just stated.

In this state one ordinarily is not relieved of responsibility for his acts because of his intoxication from liquor voluntarily taken. (*State v. Guthridge*, 88 Kan. 846, 129 Pac. 1143.) There was, of course, no evidence that liquor had been administered to the insured against his will. Aside from that somewhat extreme view, which might have been taken from the language used, it is quite clear that the language complained of, and in fact the instructions as a whole, placed a greater burden upon defendant than that laid down in the rule of law in the authorities above cited. These instructions appear to have been taken from the opinion in *Mabee v. Continental*

*Casualty Co.*, 37 Ida. 667, but it should have been noted that the supreme court of Idaho criticized the instructions as not being well drawn, but reached the view that, considering all of the instructions together, and in view of the evidence in the case, they did not constitute reversible error. That observation of the court should have put the court and counsel in this case on guard and caused them to revise the instructions in harmony with the standard authorities on the question.

Appellee raises the point that appellant is not in position to complain of the wording of the instructions given for the reason that the record does not disclose that any exceptions were taken, or objections made to the instructions, or any motion made for their modification, citing R. S. 60-2909 and *Foley v. Crawford*, 125 Kan. 252, 262, 264 Pac. 59. The pertinent syllabus in the Foley case reads:

"Complaint that instructions given should have included additional matter is unavailing in the supreme court where the instructions given did not incorrectly state the law, and where no objection was made to any of them, no modification of any of them was suggested, or no special instruction was requested." (Syl. ¶ 10.)

See *Rambo v. Electric Co.*, 90 Kan. 390, 393, 133 Pac. 533; *Murphy v. Gas & Oil Co.*, 96 Kan. 321, 327, 150 Pac. 581; *Williams v. Flour Mills Co.*, 103 Kan. 842, 844, 176 Pac. 639; *Master Sales Company v. Sytsma*, 114 Kan. 120, 122, 217 Pac. 291; *Coal & Mining Co. v. Fuel Co.*, 114 Kan. 546, 220 Pac. 178, which are to the same effect.

It will be seen that the rule relied upon by the appellee does not apply to an instruction which is in itself erroneous.

Appellee does not contend that the question now raised by appellant on the instructions was not presented to the court on the hearing of the motion for a new trial.

One other point should be noticed. At the trial the court admitted evidence with respect to the condition of the car on which the insured had been riding and the finding of bottles with the odor of alcohol therein, and also some evidence to the effect that other members of the party than the insured had been drinking, but excluded evidence offered to show that when members of the party went to the hotel shortly before one o'clock two members of the party were so drunk they could not make change to pay for the room, and also excluded evidence as to the degree or extent of in-

toxication of some of the members of the party who called at the hospital about one o'clock. There was no error in this ruling. It might very well be, when a number of persons constitute a party, all or most of whom are drinking, that some will be under the influence of liquor to a greater degree than others. The particular degree of intoxication of other members of the party could not be a defense in this action. The point is specifically so ruled upon in several of the cases reviewed in the annotations previously cited.

Because of the errors in the instructions given, the judgment of the court below must be reversed and a new trial granted. It is so ordered.

BURCH, J., dissenting as to paragraph 3 of the syllabus and the corresponding portion of the opinion.

HUTCHISON, J., dissenting as to paragraph 2 of the syllabus and the corresponding portion of the opinion.

HARVEY, J. (dissenting in part): I must differ from my associates on the rule of practice stated in syllabus 2 and treated in the opinion. My view is this: There is but one time in the trial of a case to a jury when it is important that the instructions be correct, and that is when they are read to the jury. Assuming, as we must, that both the court and counsel for the litigants desire controverted issues submitted to the jury to be determined in accordance with correct principles of law applicable to them, they should, in their respective positions, endeavor to have the instructions so framed that this can be done. The pertinent statute (R. S. 60-2909) provides, in substance, that the court shall give general instructions to the jury on the issues to be determined by them; that if counsel desire special instructions to be given they should be requested, and that before reading the instructions to the jury the court shall, when requested, "submit the same to counsel on either side and give counsel a reasonable time to suggest modifications thereof." I think the statute is designed to carry out the view above expressed. I am well aware that the provisions of our old code for the taking and preserving of exceptions by bills of exceptions were omitted from our revised code, and that it is no longer necessary to preserve such exceptions with respect to instructions, or any other adverse ruling of the court. (*Cobe v. Coughlin*, 83 Kan. 522, 111 Pac. 458.) It is enough to show that a particular matter has been

called to the attention of the court and that an adverse ruling has been made thereon. That is true, generally speaking, with respect to rulings arising on pleadings, or on the introduction or exclusion of evidence, and there is no reason why it should not be true with respect to the giving of instructions. The statute clearly contemplates that if counsel for the parties are not satisfied with the in' structions as finally prepared by the court they shall request modifications of them. To my mind an instruction needs modification if it contains a phrase or sentence placing too strong a burden on one of the parties to the action, just as much as if it omitted a phrase or sentence necessary to a full and correct statement of the principle of law involved, and that it may be erroneous for either reason. My view is that to predicate error on instructions given the record should show that the party complaining had requested an instruction differing in substance from that given, which was refused, or that he had objected to the instructions as given, which objections were overruled, or that he had moved for a modification of the instructions, which motion was denied, or that in some other appropriate way he had presented to the tria* court the question which he urges in this court and had an adverse ruling thereon. It is only by some method of this kind that it can be said that the court's attention was challenged to the matter. I realize that the decisions of the court heretofore have not been very definite on this matter. In addition to the cases cited in the opinion, see: *Rapier v. Bank,* 105 Kan. 606, 607, 185 Pac. 888; *Bank v. Amend,* 107 Kan. 25, 27, 190 Pac. 739; *Koshka v. Railroad Co.,* 114 Kan. 126, 217 Pac. 293; *Williams v. Anderson,* 122 Kan. 373, 251 Pac. 1084; *Kopka Bros. Merc. Co. v. California Canneries Ass'n,* 122 Kan. 451, 251 Pac. 1077; *Schmitz v. Schmitz,* 125 Kan. 115, 263 Pac. 1045; *Rowley v. Cosens,* 125 Kan. 431, 264 Pac. 1036; *Johnson v. Salkeld,* 126 Kan. 807, 811, 271 Pac. 385.

A party is not permitted to bury an error in generalities. (*Brown v. Oil Co.,* 114 Kan. 482, 218 Pac. 998; *Collis v. Kraft,* 118 Kan. 531, 235 Pac. 862; *State v. Bell,* 121 Kan. 866, 870, 250 Pac. 281; *Koury v. Rapalino,* 124 Kan. 582, 261 Pac. 578.) Other cases might be cited.

Diligent counsel will have investigated the law pertaining to controverted issues raised by pleadings that are to be presented to the jury. There is no reason why they should not aid the court in preparing the instructions so they state the law correctly. It should

not be regarded as a time in the trial for the laying of a secret trap. I would not go so far as the holding in *Skaer v. American Nat'l Bank,* 126 Kan. 538, 540, 268 Pac. 801, which in effect was that not only requested instructions, but requested modification of instructions, should be in writing and in proper form. That opinion was set aside on the rehearing in that case (127 Kan. 682, 275 Pac. 185). I think the view herein expressed is not only a correct interpretation of our statute, but that it would aid the prompt and efficient administration of justice. Take this case for example—a substantial sum involved, an expensive trial. Our opinion here would end the litigation were it not for the improper instruction. Had the court's attention been called to the phrases objected to on this appeal, no doubt they would have been stricken out. If not, the ruling would clearly have been error. Now the case must go back to the trial court for the delay and expense of another trial, and perhaps another appeal, with the expense and delay necessary thereto, before the rights of the parties to this cause can be finally determined.