THE STATE OF KANSAS, *Appellee,* v. HARRY J. TAYLOR and WILLIAM F. RICHARDS, *Appellants.*

No. 18,381.

### SYLLABUS BY THE COURT.

1. CONCEALING MORTGAGED PROPERTY—*Information Not Bad for Duplicity.* Under the statute making it larceny fraudulently to conceal or to sell or dispose of mortgaged property, an information charging the defendant in a single count with concealing, selling and disposing of such property is not subject to a motion to quash because of duplicity.

2. ——— *Same.* Such an information, so far as it charges a concealment of the property, is not subject to a motion to quash on the ground that the specific means employed to that end are not stated.

3. STATUTES—*Words Inadvertently Omitted May be Supplied by Construction.* Where in a compilation of the general statutes a word which was correctly included in the official publication is inadvertently omitted, and the legislature, for the purpose of effecting a change in the language of another part of the section, reënact it as it appears in the compilation, without inserting the omitted word, such word may be supplied by construction, especially where this is necessary to give effect to the manifest purpose of the statute.

4. ——— *Same.* In the phrase "the amount of twenty dollars" occurring in the present statute with regard to the fraudulent disposal of mortgaged property (Laws 1911, ch. 226, § 1) the

word "over" should be supplied between "the amount of" and "twenty dollars," its omission having been occasioned in the manner indicated.

5. ———— *Failure to Require Election—Cured by Instruction.* In a prosecution under the statute referred to, any error in overruling a motion to require the state to elect whether it will rely for conviction upon a concealment or a sale of mortgaged property is cured by an instruction that a conviction can only be had upon the charge of concealment.

6. ———— *Use of the Word "Conceal" in Statute.* The word "conceal" as used in that statute includes an intentional handling and shifting of the property in such a manner as to mislead or confuse the mortgagee in his efforts to find it.

7. ———— *Conviction Sustained.* The evidence held to be sufficient to sustain the conviction.

Appeal from Saline district court. Opinion filed July 5, 1913. Affirmed.

*H. C. Tobey,* and *R. A. Lovitt,* both of Salina, for the appellants.

*John S. Dawson,* attorney-general, and *Leonard W. Hamner,* county attorney, for the appellee; *Frank S. Knittle,* of Salina, of counsel.

The opinion of the court was delivered by

MASON, J.: Harry J. Taylor and William F. Richards were convicted upon a charge of concealing mortgaged personal property, and appeal.

The statute under which the defendants were prosecuted reads:

"Any mortgagor of personal property or any other person who shall injure, destroy or conceal any mortgaged property, or any part thereof, with intent to defraud the mortgagee, his executors, administrators, personal representatives, or assigns, or shall sell or dispose of the same without the written consent of the mortgagee or his executors, administrators, personal representatives or assigns, shall be deemed guilty of larceny." (Laws 1911, ch. 226, § 1.)

The information contained but one count. It charged that the defendants did "unlawfully, feloniously and willfully, and with intent to cheat and defraud the Bank of Tescott, the mortgagee, conceal, sell and dispose of without the written consent of said mortgagee, its representatives and assigns, the following personal property"—describing certain cattle.

The defendants urge that a motion to quash should have been sustained on the ground of duplicity, because the information charged two distinct offenses—(1) concealing the cattle with the intent to defraud the mortgagee, and (2) selling and disposing of the cattle without the written consent of the mortgagee. It has been held that the sale of mortgaged chattels without written consent is not a violation of the statute unless fraud is intended. (*The State v. Miller*, 74 Kan. 667, 87 Pac. 723.) A sufficient answer to this objection is found in the rule which has been thus stated:

"It is a well-settled rule of criminal pleading that when an offense against a criminal statute may be committed in one or more of several ways, the indictment may, in a single count, charge its commission in any or all of the ways specified in the statute. So where a penal statute mentions several acts disjunctively and prescribes that each shall constitute the same offense and be subject to the same punishment, an indictment may charge any or all of such acts conjunctively as constituting a single offense. Or, as the same rule is frequently stated, where a statute makes either of two or more distinct acts connected with the same general offense and subject to the same measure and kind of punishment, indictable separately and as distinct crimes when each shall have been committed by different persons and at different times, they may, when committed by the same person and at the same time, be coupled in one count as together constituting but one offense." (22 Cyc. 380.)

In the latter form the rule has been frequently announced by this court, the cases being cited in a note to the text quoted. The rule was applied in a case aris-

ing under a statute similar to that here involved, in *People v. Wolfrom,* 15 Cal. App. 732, 115 Pac. 1088. The allegations that the cattle were concealed and were sold are not repugnant.

The information is also objected to as not being sufficiently definite. It is urged that it should have alleged to whom the cattle were sold or disposed of, and how they were concealed. The defendants were convicted only of concealing the cattle, and any defects in charging the sale and other disposition are unimportant. The language of the statute was substantially followed, and we think no prejudice resulted from the want of a more detailed statement with regard to the concealment.

The defendants maintain also that the information should have been quashed on the ground that the statute is void because unintelligible. The penalty is thus defined, the phrase giving rise to the objection being italicised:

"For selling, injuring, destroying, concealing or disposing of such property of the value of twenty dollars and under, on which the mortgagee has a lien, or of the value of over twenty dollars, on which the mortgagee has a lien of not more than twenty dollars, such person shall be deemed guilty of petit larceny, and on conviction shall be punished by imprisonment in the county jail not exceeding one year, or by fine not exceeding one hundred dollars, or by both such fine and imprisonment; for selling, injuring, destroying, concealing or disposing of such property of the value of twenty dollars and over, on which the mortgagee has a lien to *the amount of twenty dollars,* such person shall be deemed guilty of grand larceny, and on conviction, shall be punished by confinement and hard labor not exceeding five years. (Laws 1911, ch. 226, § 1.)

The statute, after declaring it to be petit larceny fraudulently to dispose of mortgaged property which is worth twenty dollars or less, or on which the lien

amounts to twenty dollars or less, declares it to be grand larceny so to dispose of mortgaged property worth twenty dollars and over, "on which the mortgagee has a lien to *the amount of twenty dollars.*" On its face the statute thus purports to make the same act both a felony and a misdemeanor, and makes no specific provision for the situation where the property fraudulently concealed or disposed of is worth over twenty dollars and is subjected to a lien of more than that amount. The explanation, however, is very simple. The basis of the statute quoted is section 1 of chapter 105 of the Laws of 1901. In that act as passed and officially published there appeared in lieu of the italicized phrase the words "the amount of over twenty dollars." In republishing the act in the General Statutes of 1901 the word "over" was by a typographical error omitted. (Gen. Stat. 1901, § 4259.) The General Statutes of 1909 followed the General Statutes of 1901, and perpetuated the mistake by leaving out the word "over." In 1911 the legislature, in seeking to amend the statute in a wholly different matter, used the compilation of 1909 as the basis. The section as there printed was reënacted with the desired change, but because the new act was drafted from the reprint instead of from the official publication, the word "over" was omitted from it. Under these circumstances there is no difficulty whatever in construing the statute as though it contained the missing word. Its obvious purpose is to make the offense defined either grand or petit larceny, according to whether or not the mortgagee is subjected to a possible loss of over twenty dollars, which could occur only when the property fraudulently concealed or disposed of was worth over twenty dollars and was subject to a lien of more than that amount. The inadvertent omission could have been easily supplied even if it had occurred in the original statute. (*Cole v. Dorr,* 80 Kan. 251, 101 Pac. 1016; *The State*

*v. Radford,* 82 Kan. 853, 109 Pac. 284; 36 Cyc. 1113.)

At the conclusion of the state's evidence the defendants moved that the plaintiff be required to elect as to which offense it would rely upon—that of concealing mortgaged property, or that of selling and disposing of mortgaged property without the written consent of the owner. The motion was overruled. If there was any error in this it was cured by the instruction to the effect that a conviction could only be had upon the charge of concealment, and by the fact that the defendants were convicted only on that charge. (*The State v. Bussey,* 58 Kan. 679, 50 Pac. 891; *The State v. Schaben,* 69 Kan. 421, 76 Pac. 823.)

The refusal of the court to give several instructions requested is complained of. We think the general charge sufficiently covered the matters to which they referred.

It is vigorously urged that the conviction was not warranted by the evidence. The court instructed the jury, in substance, that the word "conceal" as used in the information included the intentional handling or shifting of the property in such a manner as to mislead or confuse the mortgagee in its efforts to find it. This instruction is not specifically attacked and is sustained by the authorities. (*Clement v. Dudley,* 42 N. H. 367; *The State v. Julien,* 48 Iowa, 445; *State v. Ward,* 49 Conn. 429; *Polk v. The State,* 60 Tex. Crim. Rep. 150, 131 S. W. 580.)

The facts as to which there is no substantial dispute include the following: Taylor owned about twenty-five head of cattle which were mortgaged to the Bank of Tescott for $1000. With the consent of the bank Taylor, on October 8, 1911, removed them from the place where they had been kept, in Ottawa county, to a pasture in Saline county which was controlled by Richards. The next day they were taken by Richards to a pasture of his own. Taylor then obtained permission from W. F. O'Brien to place them in a pasture belonging to

him.   He reported to O'Brien at noon on the 10th that he had done so.   About two weeks later O'Brien told Taylor he had heard the cattle were not in the pasture. Taylor asked O'Brien to look for the cattle.   He did so, making an extensive search, but found no trace of them. All other efforts to find them were unsuccessful.   On October 11 Richards drove about thirty-five head of cattle, some of which were of the same general character as some of those Taylor had mortgaged to the bank, to Beverly, and shipped them to Kansas City, where they were sold the next day.   Richards accompanied the shipment, and Taylor joined him at Culver, some twelve miles on the road.

The contention of the state is that at least a part of the mortgaged cattle were included in the bunch shipped by Richards.   The defendants maintain that there is no evidence whatever to this effect.   No particular animals covered by the mortgage were so described as to be thereby identified with any of those shipped by Richards.   The case of the prosecution depends upon circumstantial evidence justifying the inference that the mortgaged cattle, or a part of them, instead of having been turned into the O'Brien pasture, were driven to the railroad by Richards.   As supporting this theory the state relies upon evidence tending to show these facts:   Shortly before the cattle were removed from Ottawa county Richards told F. M. Weed that he was going to drive off Taylor's cattle and ship them, and that he would get a good slice of money for doing the job.   Weed told this to Samuel Christian, who helped Richards drive to the railroad the cattle that he shipped.   Christian told Richards what Weed had said, and Richards responded by saying there was no danger of Christian getting into any trouble—that Taylor had everything fixed up so there would be no danger of any one getting into trouble.   On the road they passed the house of a neighbor, who came out and spoke with them. Richards afterward told Christian that he would rather

The State v. Taylor.

have kept from going past there, as this neighbor was always nosing into other people's business; that he would rather have kept off the public highway. At the station Richards gave as a reason for loading the cattle at once, that no one would be so apt to notice them. A little less than a month later Richards told Christian that he intended giving him $12.50, and Taylor intended giving him a like amount, and that would be $25 for keeping still; that he (Richards) had a hundred and fifty dollars of the money, and Taylor had the rest. When Taylor left the place where he was working, on the trip during which he met Richards at Culver and accompanied him to Kansas City, he stated that he was going to Abilene. He testified that such was actually his intention at the time—that he had not then thought of going to Kansas City; that he had concluded he would drive to Culver, because he had some business there, but he could not remember what it was; that he had not thought anything about Richards before reaching Culver, although he had an idea he would be on the train; that he made up his mind to go to Kansas City after reaching Culver. Taylor met several acquaintances in Kansas City, whom he told he was there to see about a hay baler. After his return he asked one of them not to tell any one at Culver or Tescott that he had been to Kansas City, because he did n't want his wife to know where he had been.

We think this evidence was sufficient to take the case to the jury and to sustain the conviction.

The jury found Taylor guilty of concealing mortgaged property worth five hundred dollars, and Richards guilty of concealing property worth two hundred and fifty dollars. The contention is made that the verdicts are inconsistent. But, as suggested in the plaintiff's brief, the jury may have been convinced that Taylor concealed the entire herd of cattle, while entertaining some doubt whether more than half of them were included in the Richards shipment.

Upon a motion for a new trial an effort was made in behalf of the defendants to require the jurors to testify as to the considerations by which the jury were influenced in arriving at their verdict. Objections to the questions were rightly sustained on the ground that they related to matters essentially inhering in the verdict itself. (*L. & W. Rly. Co. v. Anderson*, 41 Kan. 528, 21 Pac. 588; *The State v. Keehn*, 85 Kan. 765, 779, 118 Pac. 851.) .

The judgment is affirmed.