No. 48,239

State of Kansas, *Appellee*, v. Tom Ferguson, *Appellant.*

(558 P. 2d 1092)

Opinion filed December 11, 1976.

*Duane D. Guy,* of Emporia, argued the cause and was on the brief for the appellant.

*Michael G. Patton,* county attorney, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

Owsley, J.: This is a direct appeal from a jury verdict wherein defendant was found guilty of impairing a security interest by failing to account for the proceeds of the sale of secured personal property, in violation of K. S. A. 21-3734 (1) (c).

The scanty record reveals defendant Tom Ferguson had previously done business with the complainant, Admire State Bank (hereinafter called bank). On April 2, 1974, defendant went to the bank and borrowed money allegedly to purchase a 1973 Yamaha motorcycle. The loan totaled $919.62 ($800.00 plus interest) and listed a 1973 Yamaha and a 1967 Fury III as collateral. The first payment of $51.10 was due May 12, 1974.

Defendant did not purchase the Yamaha. Instead, on April 4, 1974, he purchased a 1972 Suzuki for $400.00. Title to the Suzuki was placed in the name of his wife, allegedly because defendant

lacked a driver's license and could not get insurance or tags. The bank was not listed as a secured party on the vehicle title.

On April 24, 1974, defendant borrowed more money from the bank for a Ranchero automobile, as his Fury III had broken down. According to defendant, he informed the bank at that time that he had purchased a 1972 Suzuki instead of a 1973 Yamaha. Stack Cowgill, bank vice-president, testified the bank was not informed of the change until May 3 or 4, 1974, when defendant borrowed money to move to Ellinwood, Kansas. Dispute over these dates has no bearing on the outcome of the case.

On May 24, 1974, the bank received the first payment. No payments were received in June or July. In July the bank discovered defendant had sold the Suzuki to Larry Ravenstein on May 21, for $300.00. Ravenstein paid a $50.00 down payment, which apparently comprised the bulk of the May 24th payment to the bank.

At trial defendant testified the bank told him to sell both the Ranchero and the Suzuki and apply the proceeds to the note. He further stated Cowgill gave him permission to apply the June payment to the cost of ads for the sale of the car and motorcycle. Cowgill did not recall giving such permission. Defendant also testified Cowgill gave him permission to change the payment dates. Again, Cowgill had no recollection of such an agreement, although a handwritten note to this effect appears on the bank's copy of the loan. It appeared the bank was not concerned with the sale of the motorcycle as long as the note was paid.

On October 24, 1974, Cowgill went to Ellinwood to recover the motorcycle since the bank hadn't received further payments. He located Ravenstein, who did not know the bank had a security interest in the Suzuki. Ravenstein told Cowgill he had paid $150.00 of the purchase price directly to defendant and was told by defendant to pay the remainder to the Ellinwood city court for a fine incurred by defendant for driving without a license.

The bank, through its president, swore out a complaint charging defendant with selling secured property without the secured party's consent, in violation of K. S. A. 21-3734 (1) (*b*). At the preliminary hearing this was amended to reflect a violation of 21-3734 (1) (*c*).

Although defendant stated he intended to meet all his obligations to the bank, the jury found him guilty.

Defendant first contends K. S. A. 21-3734 is unconstitutionally vague and uncertain. At oral argument counsel for both parties agreed the issue had never been raised at any proceeding below.

This court will not consider the constitutionality of a statute when the issue has not been presented to the trial court. (*Vaughn v. Murray*, 214 Kan. 456, 521 P. 2d 262; *National Van Lines v. Jones*, 192 Kan. 338, 388 P. 2d 660; *Newson v. City of Wichita*, 186 Kan. 444, 351 P. 2d 10.)

Defendant next contends the court improperly and prejudicially instructed the jury. He argues instruction No. 8 led the jury to assume the bank required an accounting. The record does not reveal that defendant objected to the court's instruction, although it does show defendant proposed an instruction similar to the one given by the court. An instruction to which no objection was interposed at trial will not be reviewed on appeal unless it is clearly erroneous. (K. S. A. 22-3414 [3]; *State v. Collins*, 217 Kan. 418, 419, 536 P. 2d 1382; *State v. Rasler*, 216 Kan. 582, 586, 533 P. 2d 1262; *State v. Gidings*, 216 Kan. 14, 26, 531 P. 2d 445.) The instruction given by the court was patterned after PIK (Criminal) 59.43. We do not view the instruction as being clearly erroneous.

As his third point, defendant alleges the trial court erred in permitting amendment of the information during the course of the trial. The information charged defendant with a violation of K. S. A. 21-3734 (1) (c) on or about July 1, 1974. At trial the state moved to amend the date of the violation to on or about May 21, 1974, and on or about June 7, 1974. At defendant's request the trial was continued until the next day. At the conclusion of defendant's evidence and prior to jury instruction, the state amended the information to delete the reference to May 21, 1974.

Defendant admits none of the amendments changed the basic charge against him, but argues they occurred with such frequency during the course of the proceedings that even after the defense had rested, the jury and others present must have become confused as to the necessity of the amendments, the importance of the dates, and which date was applicable at which portion of the proceedings.

Amending an information during the course of trial is governed by K. S. A. 22-3201 (4), which states:

"The court may permit a complaint or information to be amended at any time before verdict or finding if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced."

The fact the dates were amended to conform with the evidence is not prejudicial. It was not a critical issue. No statute of limitations was involved. Alibi was not a defense to make dates important. Time was not an element of the offense. (*State v. Sisson*,

217 Kan. 475, 536 P. 2d 1369.) This court has approved amending dates in an information where such factors are not critical. (*State v. Reed,* 214 Kan. 562, 565, 520 P. 2d 1314; *State v. Osbey,* 213 Kan. 564, 569, 517 P. 2d 141.) Furthermore, a continuance was granted to defendant when the dates were first amended. There is nothing in the record to support his allegation the jury was confused.

As defendant's fourth and fifth points, he contends the trial court committed prejudicial error in permitting the state to disclose defendant's other financial affairs in his cross-examination and in rebuttal testimony.

Defendant's counsel cross-examined Cowgill as to defendant's prior loans with the bank. During questioning defense counsel asked:

"Q. Prior to that time, did Mr. Ferguson have any loans outstanding with the bank?

"A. He had before, and they were paid.

"Q. They were paid. How were they paid?

"A. Paid in full. They were paid early."

When defendant took the stand, he was cross-examined as to his late payments on three loans with the bank. Over objection he was also questioned as to his extensive debts with a finance company and another bank, and late payments on those accounts.

In rebuttal the state called defendant's brother. He testified he had co-signed a $3,000 note with a finance company on behalf of defendant. Because defendant made only two payments on the loan, the witness was still making the payments at the time of trial.

Defendant objects to the admissibility of the cross-examination and rebuttal evidence as an effort to make him appear to be a "deadbeat," thereby prejudicing the jury against him. Irrespective of the effect of the testimony, defendant cannot claim error. The state is entitled to cross-examine on matters brought before the jury by a defendant. (See, *State v. Burnett,* 221 Kan. 40, 558 P. 2d 1087, and authorities cited therein.) Defendant asserted he had always intended to meet all his financial obligations with the bank. Defendant's counsel questioned the bank on independent financial transactions with defendant, showing the jury defendant had paid the loans early. The state was entitled to test the defense through rebuttal and cross-examination.

In order to bolster his argument defendant analogizes the state's action as a violation of K. S. A. 60-421 and 60-455. K. S. A. 60-421 imposes no limitations on the scope of cross-examination or upon

affirmative evidence offered for impeachment purposes except as to evidence of former convictions. (Gard, Kansas Code of Civil Procedure Annotated, § 60-421, p. 392.) K. S. A. 60-455 does not automatically bar the evidence simply because it shows other or different crimes or, in this case, civil wrongs. (See, *State v. Burnett*, supra.)

Finally, defendant contends there was insufficient evidence to support a guilty verdict. This court has consistently held that before a verdict of guilty may be set aside because of insufficient evidence it must be clearly shown that upon no hypothesis is there substantial evidence to reach the conclusion reached by the trial court. (*State v. Harwick*, 220 Kan. 572, 578, 552 P. 2d 987; *State v. Thomas*, 220 Kan. 104, 551 P. 2d 873; *State v. Edwards*, 209 Kan. 681, 686-87, 498 P. 2d 48; *State v. Scoggins*, 199 Kan. 108, 111, 427 P. 2d 603, and cases cited therein.)

K. S. A. 21-3734 is a progeny of K. S. A. 1965 Supp. 21-652 (repealed L. 1969, ch. 180, § 21-4701). K. S. A. 1965 Supp. 21-652 was modeled after K. S. A. 58-315b and K. S. A. 58-318 (both repealed L. 1965, ch. 342, § 12). These statutes have even earlier predecessors. (See, *e. g.*, G. S. 1939 Supp. 58-315b; L. 1901, ch. 105, § 1, 2; L. 1911, ch. 226, § 1; R. S. 1923, § 58-318.) The purpose of these statutes was to protect a mortgagee from disposal of mortgaged property by making it a crime for the mortgagor to do so. (*State v. Wilfong*, 114 Kan. 689, 220 Pac. 250; *State v. Taylor*, 90 Kan. 438, 133 Pac. 861; 15 Am. Jur. 2d, Chattel Mortgages, § 242, p. 400; 14 C. J. S. Chattel Mortgages, § 279, p. 907.)

The repeal of K. S. A. 58-315b and 58-318 was brought about because of the enactment of the Uniform Commercial Code. (*Thompson v. General Finance Co., Inc.*, 205 Kan. 76, 90, 468 P. 2d 269.) K. S. A. 1965 Supp. 21-652 was enacted to complement commercial practices dealt with by the UCC (Vernon's Kansas Statutes Annotated, Criminal Code, § 21-3734, p. 80.) K. S. A. 21-3734 (1) (*c*) (formerly K. S. A. 1965 Supp. 21-652 [3]) was added to protect the mortgagee in commercial dealings where a mortgagor is allowed to sell personal property with the understanding the proceeds will make its way into the hands of the mortgagee. (See, K. S. A. 84-9-205 and 84-9-306.) Thus, K. S. A. 21-3734 (1) (*c*) makes it a crime to fail to account for the proceeds of a sale, exchange or other disposition of property in cases where such property is subject to a security interest, where the sale of the property is authorized by the mortgagee and an accounting by the mortgagor to the mortgagee is required. The consent for sale and

requirement for accounting may be contained in the security agreement or in some other manner, including oral declarations by the mortgagee. This is true notwithstanding the fact the security interest requires written consent. (*State v. Burton,* 101 Kan. 62, 165 Pac. 847.) Defendant testified the bank had given him consent to sell the Ranchero and Suzuki to pay off the outstanding loan. The essence of the bank's testimony was that it was not concerned with defendant's acts as long as it received its money. The record reveals the collateral was sold but the bank was not paid.

A review of the record discloses there is substantial competent evidence to support the conviction.

The judgment is affirmed.