NOT DESIGNATED FOR PUBLICATION

No. 111,788

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TIMOTHY J. WELLS-LEE,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; BENJAMIN L. BURGESS, judge. Opinion filed September 18, 2015. Affirmed.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., LEBEN, J., and HEBERT, S.J.

*Per Curiam*: Timothy J. Wells-Lee was charged in three separate complaints with 11 counts of various sexual offenses involving four different victims. After a consolidated jury trial, he was convicted on 10 counts and acquitted on 1. On appeal, Wells-Lee argues that the district court erred by allowing the State to amend its complaint after it had presented its evidence at trial. He also alleges that there was insufficient evidence to support several of his convictions.

We find no error and affirm the convictions.

1

*Factual and Procedural Background*

Wells-Lee was born on October 31, 1983. In February 2006, he began coaching cheerleading at Wichita All Stars. In March 2007, he left Wichita All Stars to coach at Cheer Fusion in Wichita. In the summer or early fall of 2008, the parents of M.H., one of Wells-Lee's students who was then 14 years old, approached Kristin Mountain, the owner of Cheer Fusion, regarding their concerns over some text messages which M.H. had received from Wells-Lee. When Mountain and M.H.'s mother confronted Wells-Lee, he claimed that the texts were just quoting movie lines. Mountain advised Wells-Lee that it was against her policy for coaches to have communications with individual athletes and required him to change his phone number and delete his Myspace and Facebook pages. Mountain subsequently terminated Wells-Lee on February 14, 2009. Wells-Lee turned in his key, and to Mountain's knowledge, he was never again in the Cheer Fusion gym.

After leaving Cheer Fusion, Wells-Lee began coaching at Tribe Cheer in Oklahoma City and M.H. began going to Tribe Cheer for instruction. In the spring of 2010, at the age of 16, M.H. became pregnant.

In May 2010, Wells-Lee applied for a job at a cheer studio in Virginia, listing his work at Tribe Cheer but failing to note his previous job at Cheer Fusion. Wells-Lee, who was now 26 years old, was hired and living with the owner of the Virginia cheer studio until he could find a place of his own. A few weeks later, Trisha Hart, one of the owners with whom Wells-Lee was living, discovered a journal in Wells-Lee's bedroom containing naked pictures of a young girl. Hart took photos of the inappropriate pages with her phone and, when Wells-Lee returned, she made him leave the home. Shortly thereafter, Wells-Lee resigned from the studio. Hart told M.H.'s stepfather about finding the journal, and eventually she turned over her photos of the journal pages to law enforcement.

2

In August 2010, M.H.'s father discovered a checkbook from a joint checking account between M.H. and Wells-Lee. M.H.'s mother and stepfather then went to the Sedgwick County Exploited and Missing Child Unit to report inappropriate contact between M.H. and Wells-Lee. On September 10, 2010, Wells-Lee was arrested at his parent's home.

Three other girls who had attended Cheer Fusion also came forward with allegations against Wells-Lee, and the State filed three separate criminal cases against him. On September 14, 2010, Wells-Lee was charged in Case No. 10CR3004 with one count of criminal sodomy, two counts of aggravated indecent liberties, and one count of indecent liberties, naming "K.C." as the victim; on October 13, 2010, the State charged Wells-Lee in Case No. 10CR3297 with two counts of aggravated indecent liberties and one count of criminal sodomy against "K.H." and one count of rape against "S.A."; and, after a lengthy investigation, the State finally charged Wells-Lee on December 8, 2011, with two counts of rape and one count of aggravated indecent liberties for conduct involving "M.H."

A consolidated jury trial began on April 15, 2013, with 2 full days of jury selection. In outlining Wells-Lee's defense during opening statements, defense counsel stated that Wells-Lee admitted to having a relationship with M.H. but that the evidence would show that there was no sexual contact until after she turned 16 years old. Wells-Lee denied that any of the other alleged conduct ever happened, contending that M.H. had simply made up the other allegations after Wells-Lee broke up with her, and that the other allegations were the result of collusion among the girls to fabricate their stories.

Wells-Lee particularly focuses his appeal on his convictions involving M.H., who was born on September 12, 1993. She testified at trial that she met Wells-Lee when he began as an instructor where she took cheer lessons when he was 21 years old and she was approximately 11 years old and at the end of her sixth grade school year. She

testified that he kissed her after cheer practice sometime between December and January of her seventh grade year when she was 12 years old. In February or March of that school year, she was at a cheer party at which Wells-Lee was allowed to stay the night, and after everyone else had fallen asleep, Wells-Lee woke her up and took her into another room where he kissed her and inserted his fingers into her vagina.

M.H. testified that on another occasion when she was home sick from school at her father's house, Wells-Lee came over when her father was at work and again kissed her and put his fingers into her vagina. She testified that this occurred during the springtime, and that she was 12 years old and in the seventh grade. Although the prosecutor attempted to correct M.H that she would have been 13 years old in the spring of her seventh grade year, she continued to testify that she was 12 years old and in the seventh grade. M.H testified to another incident when she snuck out of her house and Wells-Lee picked her up and took her to a field where he had sexual intercourse with her. She maintained that this occurred in August 2006, when she was 12 years old.

The final incident testified to by M.H occurred when she snuck out of the house, took her sister's car, and drove to Wells-Lee's apartment in Wichita where the two of them engaged in sexual intercourse. On direct examination, she testified that this occurred in the week before her 16th birthday. On cross-examination, defense counsel elicited from M.H. that she was actually 13 for most of her seventh grade year, which was when she alleged that the first three incidents occurred. With regard to the incident of sexual intercourse at Wells-Lee's apartment, defense counsel confronted M.H. with her testimony that it occurred the week before she turned 16, which would have been in September 2009. He pointed out to her that she had also testified that Wells-Lee left Wichita in February or March of 2009, and that he did not have an apartment in Wichita after that. M.H. responded that the incident must have happened the prior year—the week before she turned 15 instead of 16.

4

On direct examination, M.H. testified that after Wells-Lee moved to Oklahoma in February 2009, she drove her car to see him there and began cheering at the studio in Oklahoma where he worked. She became pregnant in the spring of 2009 when she was 16, and she testified that she was only having sexual intercourse with Wells-Lee at the time. M.H. had been in the shower with Wells-Lee when the police came to arrest him in September 2010, and she admitted that she was trying to protect Wells-Lee in her initial interview with police. On cross, M.H. testified that she initially told the police that nothing sexual occurred between her and Wells-Lee until after she turned 16 and that she did not change her story until after she heard that he had "hooked up" with someone else.

On redirect, M.H. responded to the prosecutor's questions stating that she was 12 years old the first time she had sex with Wells-Lee. She reiterated her testimony that the last-charged incident occurred the week before her 15th birthday instead of before her 16th birthday, recalling that she took her sister's car because she did not have one yet and was not supposed to be driving at the time she went to his apartment. On recross-examination, she acknowledged that in her interview with police she had had stated that the incident occurred the week before her 16th birthday.

K.H. was the State's next witness. Wells-Lee does not challenge any of his convictions related to K.H. In summary, her testimony was that she was coached by Wells-Lee at Wichita All Stars and at Cheer Fusion and that she had sex with Wells-Lee at his apartment when she was approximately 14 years old and in either the seventh or eighth grade. She also testified that on another occasion when she was 14 years old, she and Wells-Lee had oral sex and sexual intercourse on the crash mats at the Cheer Fusion gym.

Next to testify was K.C. Although Wells-Lee challenges on appeal the sufficiency of the evidence of one of her allegations, it is the one allegation on which the jury ultimately acquitted him. The substance of her testimony was that Wells-Lee was her

coach at Cheer Fusion and that they had sexual intercourse and oral sex when she was 14 years old.

Finally, S.A. testified that Wells-Lee was also her coach at Cheer Fusion. One night in February or March of 2009, when she was 13 years old, she had her mom drop her off at Wells-Lee's apartment to watch TV, and while she was there, Wells-Lee inserted his fingers in her vagina and had her touch his penis. She testified that she thought this might have occurred after Wells-Lee quit working at Cheer Fusion, but that it was at his apartment near the gym.

In addition to the four victims, the State presented testimony from M.H.'s stepfather; Trisha Hart, the owner of the cheer studio in Virginia; Kristin Mountain, the owner of Cheer Fusion; and Jeff Weible, commander of the Sedgwick County Exploited and Missing Child Unit. After the State had presented its evidence, the district court, over the objections of defense counsel, allowed the State to amend the complaints to conform to the dates testified to by the State's witnesses.

Wells-Lee testified in his defense. He stated that he cheered at Barton County Community College, then at Wichita State University from 2004-2007. During the time he worked at Cheer Fusion, Wells-Lee had a girlfriend who was 18 years old, with whom he maintained a relationship until August 2009. He testified that during this time he had sexual relations only with this girlfriend and other noncheerleading girls when he had broken up with his girlfriend.

Wells-Lee first started coaching M.H. in the summer of 2006, when she was 12 years old. He testified that he never kissed or touched her in a sexual way before she was 16 years old. He related that in April of 2008, he was injured in a car accident which required him to be hospitalized, to wear a back brace, and to be monitored 24 hours a day for 60 days. Wells-Lee maintained that Mountain did not fire him from Cheer Fusion but,

6

rather, that he had resigned. He said that he had done some consulting work at Tribe Cheer while he was still at Cheer Fusion and he began working there full time on April 1, 2009. He testified that he moved out of his apartment in Wichita on February 14, 2009, although his lease did not expire until August 1, 2009. He was able to sublease the apartment and was completely out of it by the end of March.

Wells-Lee admitted that he began dating M.H. on November 21, 2009, when she was 16 years old, and that they had sexual intercourse for the first time in January 2010. According to Wells-Lee, they only had sexual relations between January 2010 and his arrest on September 10, 2010. He was aware that at some point during that time M.H. became pregnant. He denied having sex with any of the other victims.

Wells-Lee called several other witnesses to testify in his defense, including family members and his roommate, Clint McFadden. McFadden testified that in March 2009, Wells-Lee was still back-and-forth between Oklahoma City and Wichita, and specifically, that Wells-Lee was at their apartment on the day of his grandmother's funeral in March 2009. After the defense rested, the State presented some rebuttal evidence and, finally, Wells-Lee testified in further rebuttal for the defense. Presentation of the evidence was completed on April 22, 2013. On April 22, the State filed the amended complaints in each of the cases in accordance with the district court's earlier ruling. On April 23, 2013, the jury found Wells-Lee guilty on 10 of the 11 counts alleged by the State but acquitted him on the allegation of indecent liberties involving K.C.

On July 26, 2013, the district court sentenced Wells-Lee to a total sentence of a hard 25 life sentence plus 240 months' imprisonment. Wells-Lee filed a timely notice of appeal on July 31, 2013.

*Amendments to the Pleadings*

Wells-Lee first argues that the district court erred in allowing the State to amend the complaint, particularly for the three charges presented in Case No. 11CR3578 pertaining to M.H. He does not raise any claim of error regarding amendment to any of the other charges.

*Standard of Review*

K.S.A. 22-3201(e) states that "[t]he court may permit a complaint to be amended at any time before verdict or finding if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced."

We review a district court's decision to allow an amendment to pleadings for abuse of discretion, which the defendant has the burden to establish. *State v. Holman,* 295 Kan. 116, 145-146, 284 P.3d 251 (2012). A judicial act constitutes an abuse of discretion if the action is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *State v. Mosher,* 299 Kan 1, 3, 319 P.3d 1253 (2014).

The amendments allowed by the district court in the present case pertained to the time periods during which the crimes charged were alleged to have been committed. Because the amendments did not cause an additional or different crime to be charged, the issue before us is whether the amendments caused prejudice to Wells-Lee's substantial rights. See *Holman*, 295 Kan. at 145-46.

*The Amendments*

In accord with the "better practice" suggested in *Holman*, the State made its request to amend the charging documents at the close of its case-in-chief. See 295 Kan. at

8

The State maintained that the amendments were required in order to correspond the time periods during which the acts were alleged to have occurred with M.H.'s trial testimony.

Clearly, M.H. exhibited some inconsistency and confusion in her trial testimony. With regard to the first two counts, she testified that both incidents occurred when she was 12 years old, which would have been before September 12, 2006. But through cross-examination, redirect examination, and recross-examination, M.H. maintained that she was sure that the incidents occurred when she was in the seventh grade—the 2006-2007 school year. With regard to the third count, M.H. first testified that the incident occurred just prior to her 16th birthday but on cross-examination and redirect examination provided details which would establish that it was just prior to her 15th birthday.

The district court determined that when an amendment is requested before the case is submitted to the jury for deliberation, it should be liberally granted to conform to the evidence that has been presented. The dates for the first two counts were amended to cover both the time M.H. was 12 years old and her seventh grade school year: Count 1 was amended from on or between April 1, 2006, and May 31, 2006, to April 1, 2006, and May 31, 2007; Count 2 was similarly amended from on or between August 1, 2006, and August 31, 2006, to August 1, 2006, and May 31, 2007; Count 3 was amended from September 1, 2009, and September 5, 2009, to September 1, 2008, and September 11, 2008.

Wells-Lee does not persuasively show how he was prejudiced by the district court allowing the State to amend the first two counts.

Regarding a charge of indecent liberties with a child, the Kansas Supreme Court has specifically held that time is not an indispensible ingredient and noted that it is not unusual for inconsistency as to dates to appear particularly where memories of children

9

are involved. *Holman,* 295 Kan. at 146 (quoting *State v. Nunn,* 244 Kan 207, 227, 768 P.2d 268 [1989]).

Wells-Lee does not dispute the fact that M.H. testified on cross-examination she was in the seventh grade when the incidents occurred. He was aware that M.H. was not certain of exact dates on which the alleged crimes were committed. Although M.H was 19 years old when she testified, several years had passed before the case finally went to trial, and the first two incidents would have occurred more than 6 years before. Although she testified variously as to ages, she was consistent and insistent as to grade, which supported the district court decision to allow the amendment.

Wells-Lee argues, however, that the amendments were unfair because he had created reasonable doubt by confusing M.H. as to when events occurred. But he fails to show how the amendments hindered him from attacking M.H.'s credibility. Wells-Lee was still free to, and did, suggest that M.H.'s confusion as to dates and ages indicated that she might be making up the allegations. From his opening statement, Wells-Lee's defense counsel emphasized that the incidents alleged were the product of "competition, contamination[,] and collusion" and clearly put M.H.'s credibility on the line by suggesting that she had a "really good imagination." The crux of the defense was that Wells-Lee did not do anything illegal with M.H. before she turned 16 years old; it was not a denial related only to specific dates or times. The amendments to time frames did not affect his ability to present this defense.

Wells-Lee also argues that the State invited error by eliciting M.H.'s testimony regarding her age at the time of the events. But, as noted above, time is not an indispensible ingredient in a child sex case and memory discrepancies are normal. *Holman*, 295 Kan. at 146. M.H.'s inconsistency was not an invitation to error, and the amended complaint simply covered the timeframes suggested by her testimony.

10

Wells-Lee further suggests that, notwithstanding the above-cited authorities, the State in this instance, by presenting and using a chart during the trial, made the timelines of the events into an indispensible part of this case. He cites no authority for this novel proposition, and his argument is unpersuasive. Despite his representations to the contrary, the State's chart was accurate; M.H.'s testimony was inconsistent with the chart. While M.H.'s age was an indispensable element of the charges, the State does not have to prove the actual dates on which the crimes occurred. Even with the amendments, the testimony established that M.H. was either 12 or 13 years old with regard to Counts 1 and 2 and was under 16 years old with regard to Count 3.

Addressing Count 3, Wells-Lee specifically alleges that he was prejudiced by the amendment because it affected his defense to the charge. M.H. testified on direct examination that this incident occurred at Wells-Lee's apartment in Wichita right before her 16th birthday. But it was defense counsel who confronted her on cross-examination with the fact that Wells-Lee did not live in Wichita at that time. Under questioning by defense counsel, M.H. changed her testimony and acknowledged that it must have been right before her 15th birthday. This change in point of reference was thoroughly explored on cross-examination and on redirect examination, and M.H. related significant details consistent with her revised recollection.

Wells-Lee now argues that his defense on this charge was akin to an alibi defense, which he was precluded from asserting. However, no alibi was timely filed and the amendment was made prior to the presentation of Wells-Lee's evidence. At no time had Wells-Lee yet suggested that it would have been impossible for him to have committed the crime as alleged in Count 3. His alibi analogy is not persuasive when considered in light of prior holdings of the Kansas Supreme Court. See *State v. Van Cleave*, 239 Kan. 117, 121, 716 P.2d 580 (1986); *State v. Ferguson*, 221 Kan. 103, 105-06, 558 P.2d 1092 (1976).

11

Wells-Lee candidly admitted, and the record bears out, that he had a sexual relationship with M.H. beginning in the fall after her 16th birthday and continuing until his arrest. He adamantly denied any prior relationships with either M.H. or any of the other victims. Just as with Counts 1 and 2, his defense is that he did not commit the act alleged in Count 3, not that he did not commit it on a particular date. The case boils down to a question of credibility which is properly the province of the jury. Wells-Lee thoroughly vetted his defense through cross-examination and by direct testimony, and the jury did not accept that defense.

Wells-Lee has failed to persuade us that the amendments allowed by the district court prejudiced his defense to Counts 1, 2, and 3 of Case No. 11CR3578. The district court, having considered the evidence and the arguments of counsel, properly exercised its discretion by allowing the alleged time frames to be revised and expanded.

*Sufficiency of the Evidence*

Wells-Lee next argues that the State presented insufficient evidence to support Counts 7 and 11 as charged in the jury instructions. Essentially, he argues that the evidence showed he left Wichita on February 14, 2009, so there was insufficient evidence to prove any of the charges for which the range of time extended beyond that date.

*Standard of Review*

When the sufficiency of evidence is challenged in a criminal case, this court reviews all the evidence in a light most favorable to the prosecution and decides whether we are convinced that a rational fact finder could have found the defendant guilty beyond a reasonable doubt. *State v. Williams*, 299 Kan 509, 525, 324 P.3d 1078 (2014). In determining whether there is sufficient evidence to support a conviction, we generally will not reweigh the evidence or the credibility of witnesses. 299 Kan. at 525. It is only in

12

rare cases where the testimony is so incredible that no reasonable fact finder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed. *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

*The Evidence*

The seventh charge to the jury was the allegation from Case No. 10CR3297 that Wells-Lee raped S.A. between January 1, 2009, and March 1, 2009, at his apartment near Cheer Fusion in Wichita. In his appellate brief, Wells-Lee suggests that it is "undisputed" that he left the apartment on Rock Road on February 14, 2009, so there was insufficient evidence to convict him of a crime at that location which could have occurred between February 14, 2009, and March 1, 2009.

However, as the State points out, the evidence is *not* undisputed. Several witnesses, including Wells-Lee's mother testified that he did not move from Wichita to Oklahoma until the end of March 2009. She also testified that he still had his apartment in Wichita and commuted between Wichita and Oklahoma City in the weeks after he was terminated from Cheer Fusion. Wells-Lee himself testified that although he quit Cheer Fusion on February 14, 2009, and eventually began working at Tribe Cheer on April 1, 2009, he was not completely out of his apartment until the end of March. His roommate at the apartment verified that Wells-Lee continued to have access to the apartment and was at the apartment in March at the time of his grandmother's funeral.

Thus, it is somewhat disingenuous to suggest that Wells-Lee was not in Wichita or that he had no access to the apartment during part of the period covered by the charging document. Clearly, the record supports the assertion that he indeed had such access. There was sufficient evidence upon which a reasonable jury could conclude beyond a reasonable doubt that he committed the crime charged.

13

Wells-Lee raises a similar argument regarding the 11th charge, which was the allegation from Case No. 10CR3004 that Wells-Lee committed aggravated indecent liberties against K.C. during the spring break of 2009. We are somewhat at a loss to understand why he raises an issue of insufficient evidence because the jury *acquitted* him of this charge and any argument is thereby rendered moot. See *State v. Waller*, 299 Kan. 707, 720, 328 P.3d 1111 (2014).

*Evidence of the Victim's Ages*

Finally, Wells-Lee argues that there was insufficient evidence to support his three convictions for rape involving S.A. and M.H. because the State failed to prove that the victims were less than 14 years old at the time of the alleged crimes. Wells-Lee was charged and convicted under K.S.A. 21-3502 (a)(2) which defines rape as sexual intercourse with a child who is under 14 years of age.

*Standard of Review*

The standard of review for challenges to the sufficiency of the evidence is fully set forth above. See *Williams*, 299 Kan. at 525. Wells-Lee's argument also implicates the applicability of a statute; interpretation of a statute is a question of law over which we have unlimited review. *State v. Eddy*, 299 Kan. 29, 32, 321 P.3d 12 (2014).

*The Statute*

Wells-Lee argues that for purposes of determining the victims' ages at the time sexual intercourse occurred, K.S.A. 2014 Supp. 65-6732 (a) applies, and that the victims' lives began at fertilization, the time of which the State failed to prove. Since the State failed to prove that the victims' lives began less than 14 years before Wells-Lee had sexual intercourse with them, the State failed to prove the allegations of the charging

14

document. The State argues that K.S.A. 2014 Supp. 65-6732(a) does not apply in these situations.

The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *State v. Williams*, 298 Kan. 1075, 1079, 319 P.3d 528 (2014). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *State v. Phillips*, 299 Kan. 479, 495, 325 P.3d 1095 (2014).

The State correctly points out that Wells-Lee does not provide persuasive support for his assertion that the legislature intended K.S.A. 2014 Supp. 65-6732, a statute adopted under the public health code, to apply to any portion of the criminal code. Courts must construe statutes to avoid unreasonable or absurd results. *State v. Frierson*, 298 Kan. 1005, 1013, 319 P.3d 515 (2014). The State argues that using an abortion regulation statute to define the term "under 14 years of age" in K.S.A. 21-3502(a)(2) would lead to unreasonable or absurd results. We agree.

Common usage and practice attributes an ordinary meaning to the term "age" as being calculated by reference to *birth* dates. Redefinition of the concept to equate "age" with "life beginning at conception" would introduce an unacceptable uncertainty into the criminal law. The legislature must be clear and specific if it intended by enacting K.S.A. 2014 Supp. 65-6732(a) to make such a sweeping change in the full range of criminal laws which rely on the well-established usage of the term "age."

*The Evidence*

There is nothing in K.S.A. 2014 Supp. 65-6732 that changes how juries can determine whether a person was less than 14 years of age. In accord with the common usage and giving the word "age" its ordinary meaning, the State introduced evidence of

15

the victims' birthdays, which constituted sufficient evidence to support the jury's decision that the victims were under 14 years of age when the sexual intercourse occurred.

Affirmed.