NOT DESIGNATED FOR PUBLICATION

No. 113,005

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MATTHEW CAMPBELL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BENJAMIN BURGESS, judge. Opinion filed April 1, 2016.
Affirmed.

*Ryan Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*,
attorney general, for appellee.

Before GREEN, P.J., BUSER, J., and HEBERT, S.J.

*Per Curiam*:  Based on the dates the applicable crimes were committed, Matthew
Campbell was convicted of two counts of rape in violation of K.S.A. 21-3502(a)(2) and
recodified in K.S.A. 2012 Supp. 21-5503(a)(3), two counts of aggravated criminal
sodomy in violation of K.S.A. 21-3506(a)(1) and recodified in K.S.A. 2012 Supp. 21-
5504(b)(1), and two counts of aggravated indecent liberties with a child in violation of
K.S.A. 21-3504(a)(3) and recodified in K.S.A. 2012 Supp. 21-5506(b)(3). After finding
that Campbell was an aggravated habitual sex offender under K.S.A. 21-4642 and
recodified in K.S.A. 2012 Supp. 21-6626, the trial court sentenced Campbell to six

1

consecutive life sentences without the possibility of parole. On appeal, Campbell argues that the trial court erred by allowing the State to amend the complaint after the defense had already rested. Campbell additionally argues that he should have been sentenced as a persistent sex offender under K.S.A. 21-4704(j) and K.S.A. 2012 Supp. 21-6804(j) instead of as an aggravated habitual sex offender under K.S.A. 21-4042 and K.S.A. 2012 Supp. 21-6626. Nevertheless, both of Campbell's arguments are meritless. Accordingly, we affirm.

In October 2009, M.D. and her then 7-year-old daughter, K.D., moved in with Campbell. M.D., K.D., and Campbell lived in Campbell's house located on Pattie Street. In June 2010, M.D. and Campbell married. At some point, the family moved into a house located on Topeka Street. In July 2012, Campbell moved out of the Topeka Street house. M.D. and Campbell divorced in October 2012.

In March 2013, K.D. texted M.D. that Campbell had "had 'sex' with her." M.D. took K.D. to the police. During a police interview, K.D. told the police that Campbell started having sex with her when they lived at the Pattie Street house and continued to have sex with her after moving to the Topeka Street house. K.D. also told police that Campbell had taken her clothes off, touched her breasts, touched her vagina, touched her buttocks, licked her "privates," ejaculated on her back, and put his penis inside her buttocks at both the Pattie Street house and the Topeka Street house.

The State charged Campbell with the following: (1) Count I, rape, that occurred between October 1, 2009, and August 31, 2010; (2) Count II, aggravated criminal sodomy, that occurred between October 1, 2009, and August 31, 2010; (3) Count III, aggravated indecent liberties with a child, that occurred between October 1, 2009, and August 31, 2010; (4) Count IV, rape, that occurred between August 1, 2010, and July 31, 2012; (5) Count V, aggravated criminal sodomy, that occurred between August 1, 2010, and July 31, 2012; and (6) Count VI, aggravated indecent liberties with a child, that

2

occurred between August 1, 2010, and July 31, 2012. Counts I, II, and III corresponded with the dates that the State believed the family lived on Patty Street. Counts IV, V, and VI corresponded with the dates that the State believed the family lived on Topeka Street.

Campbell's jury trial was held from July 15-17, 2014. At the trial, K.D. testified that she and her mother moved into Campbell's house on Pattie Street when she was in the third grade. K.D. testified that while living at the Pattie Street house, Campbell never put his hands or penis into the place she "go[es] to the restroom" but would: (1) touch her breasts, buttocks, and "the part of [her] body that she go[es] pee out of" with his fingers, mouth, and penis; (2) make her touch his penis with her hands; and (3) ejaculate on her back. K.D. testified that Campbell touched her about 2 to 3 times a week. K.D. stated that Campbell continued to touch her in this manner at the Topeka Street house.

M.D. testified that she and K.D. moved into Campbell's house on Pattie Street in October 2009. M.D. testified that she, K.D., and Campbell moved into the Topeka Street house in August 2010.

Campbell testified on his own behalf. Campbell denied that he was guilty of the rape charges but admitted that he was guilty of the aggravated criminal sodomy and the aggravated indecent liberties with a child charges. Even so, Campbell testified that he could not be convicted because the dates alleged in the complaint were wrong. Campbell testified that the family moved into the Topeka Street house in February or March 2011, not August 2010. Campbell then explained that he did not engage in any sexual conduct with K.D. at the Pattie Street house until after August 2010, stating:

"Well, according to [K.D.'s] statement, you know, they moved in in June, of 2010, four to five months later is when the first event happened there. One of the reasons I'm up here is, you know, I don't think it's a question of whether I'm guilty, it's a question of what I'm guilty of. And I'm being charged for an offense that happened and . . . .

3

". . . [It] says between the 1st day of October, 2009, through the 31st day of October—August, 2010. By the witnesses' own statements, well really none of the first three offenses would have occurred until October, of 2010, which we were—you know, which is outside the complaint of the time line of what they're asking about."

Campbell further explained that he knew he did not engage in sexual conduct with K.D. until after August 2010 because he remembered the first time he touched K.D. was the day he had a car wreck in November 2010.

Following Campbell's testimony, the State moved to amend the complaint. Regarding Counts I, II, and III, the State requested to amend the time frames that Campbell allegedly committed the crimes from October 1, 2009, through August 31, 2010, to October 1, 2009, through March 30, 2011. Campbell objected, arguing that the amendments would prejudice him because he had been relying on the dates listed in the complaint. The trial court granted the State's request. The trial court explained that the amendments were not prejudicial, especially given the fact that Campbell admitted that he was guilty while testifying.

The jury ultimately found Campbell guilty of all six counts. At sentencing, Campbell argued that the trial court should sentence him as a persistent sex offender under K.S.A. 21-4704(j) and K.S.A. 2012 Supp. 21-6804(j) instead of as an aggravated habitual sex offender under K.S.A. 21-4642 and K.S.A. 2012 Supp. 21-6626. The trial court ruled that Campbell, who had three prior convictions of aggravated indecent liberties with a child, was a habitual sex offender. The trial court sentenced Campbell to six consecutive life sentences without the possibility of parole.

*Did the Trial Court Err By Allowing the State to Amend the Complaint?*

Under K.S.A. 22-3201(e), "[t]he court may permit a complaint or information to be amended at any time before verdict or finding if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced." "Whether to allow the amendment is subject to the district court's discretion." *State v. Bischoff*, 281 Kan. 195, 205, 131 P.3d 531 (2006). An abuse of discretion occurs when no reasonable person would agree with the trial court's decision. 281 Kan. at 205. Defendants bear the burden of proving that the trial court abused its discretion. 281 Kan. at 205.

On appeal, Campbell asserts that the amendments to Counts I, II, and III "caused unfair prejudice to the preparation and presentation of his defense at trial." Campbell asserts that part of his defense strategy was that "he 'was guilty' but not guilty of everything alleged and not within the time frames alleged in the complaints." By amending the complaint, Campbell argues that the trial court undermined his attack on K.D.'s credibility concerning her memory of the timing of the events. Campbell also argues that he should not be punished for the State's failure to investigate the actual time the family lived at the Pattie Street house. Based on these alleged errors, Campbell contends that he is entitled to a new trial.

Nevertheless, Campbell's arguments are meritless as Campbell was not prejudiced by the amendments to the complaint. In the past, our Supreme Court has examined and rejected similar arguments. See *State v. Holman*, 295 Kan. 116, 146, 284 P.3d 251 (2012); *State v. Nunn*, 244 Kan. 207, 224, 227-28, 768 P.2d 268 (1989); *State v. Van Cleave,* 239 Kan. 117, 121, 716 P.2d 580 (1986); *State v. Ferguson,* 221 Kan. 103, 105-06, 558 P.2d 1092 (1976). For instance, in *Ferguson*, our Supreme Court explained that "[t]he fact the dates were amended to conform with the evidence [was] not prejudicial" because: (1) "[i]t was not a critical issue"; (2) "[n]o statute of limitations was involved";

5

(3) "[a]libi was not a defense to make dates important"; and (4) "[t]ime was not an element of the offense." 221 Kan. at 105.

In *Nunn*, Nunn challenged the State's amendments to the complaint concerning the dates he committed indecent liberties with a child and aggravated criminal sodomy, arguing that the amendments prevented him from forming an adequate defense. The State amended the complaint from a 1-month and 2-week time frame in two separate counts, to a 1-year time frame in both counts. Our Supreme Court held that "[t]ime is not an indispensable ingredient of the offenses of indecent liberties with a child or aggravated criminal sodomy." 244 Kan. 207, Syl. ¶ 19. Our Supreme Court further explained that "'it is not unusual for uncertainty as to dates to appear particularly where the memories of children are involved.'" 244 Kan. at 227 (quoting *State v. Sisson*, 217 Kan. 475, 478, 536 P.2d 1369 [1975]).

In *Holman*, our Supreme Court held that Holman failed to show prejudice when the State amended the dates listed in Count II of the complaint after the defense had rested. 295 Kan. at 146-47. The *Holman* court explained that Holman should not have been surprised by the amendments at the end of his case-in-chief because the victim, who was 10 years old when she testified at trial, had consistently "struggled with concepts of time and with remembering dates of the incidents." 295 Kan. at 146.

In this case, Campbell has failed to show that he was prejudiced by the amendments. The amendment of the dates listed in Counts I, II, and III did not involve a critical issue. The amendments did not involve any statute of limitations. Moreover, time was not an element of any of the amended counts. See K.S.A. 21-3502; K.S.A. 21-3504; K.S.A. 21-3506. Although Campbell argues that the amendments undermined his defense strategy that "he 'was guilty' but not guilty . . . within the time frames alleged in the complaints," this argument is absurd. At trial, Campbell testified that he was guilty of all charges but the rape charges. Thus, Campbell was not arguing that he had an alibi but

6

instead arguing that the jury could not convict him based on a technicality. Given that Campbell admitted his guilt at trial, it is unclear how the amendments to Counts I, II, or III resulted in any prejudice.

Moreover, K.D., who was born in March 2002, was only 7 years old when she and her mother moved in with Campbell and 12 years old when she testified at trial. Despite her youth, K.D. was able to tell police that the sexual molestation occurred at both the Pattie Street house and the Topeka Street house. As a result, Campbell could prepare a defense because he knew the general time frames the State was alleging that the sexual molestation occurred. The fact Campbell chose to structure his defense around the notion that he could not be convicted because the dates in Counts I, II, and III were incorrect, does not mean he suffered prejudice. K.S.A. 22-3201(e) states that the complaint may "be amended *at any time before verdict or finding*." Thus, Campbell should have known that the State could amend the complaint following his testimony.  Furthermore, in making this argument, Campbell ignores that M.D. testified that the family moved to the Topeka Street house in August 2010; Campbell's argument hinges upon the unproven assumption that he truthfully testified about the dates he sexually molested K.D.

In summary, Campbell was not prejudiced by the amendments to Count I, II, and III. Because Campbell was not prejudiced, the trial court did not abuse its discretion by allowing the State to make the amendments. Accordingly, we affirm.

*Did the Trial Court Err by Sentencing Campbell as an Aggravated Habitual Sex Offender Under K.S.A. 21-4642 and K.S.A. 2012 Supp. 21-6626?*

Interpretation of a sentencing statute is a question of law over which this court has unlimited review. *State v. Phillips*, 299 Kan. 479, 494, 325 P.3d 1095 (2014).

7

Under K.S.A. 21-4642 and K.S.A. 2012 Supp. 21-6626, "[a]n aggravated habitual sex offender shall be sentenced to imprisonment for life without the possibility of parole." An "aggravated habitual sex offender" is any "person who, on or after July 1, 2006: (A) has been convicted in this state of a sexually violent crime . . .; and (B) prior to the conviction of the felony under subparagraph (A), has been convicted of two or more sexually violent crimes." K.S.A. 2012 Supp. 21-6626(c)(1); accord K.S.A. 21-4626(c)(1). A "sexually violent crime" includes rape, aggravated indecent liberties with a child, and aggravated criminal sodomy. K.S.A. 21-4626(c)(3)(A), (C), (E); K.S.A. 2012 Supp. 21-6626(c)(2)(A), (B), (D).

Under K.S.A. 21-4704(j)(1) and K.S.A. 2012 Supp. 21-6804(j)(1), a "persistent sex offender whose current convicted crime carries *a presumptive term of imprisonment* shall be double the maximum duration of the presumptive imprisonment term." (Emphasis added.) A persistent sex offender includes a person who "[h]as been convicted in this state of a sexually violent crime" while having at least one prior sexually violent crime conviction. K.S.A. 21-4704(j)(2)(A)(i)-(ii); K.S.A. 2012 Supp. 21-6804(j)(2)(A)(i)-(ii). Sexually violent crimes under this statute include rape, aggravated indecent liberties with a child, and aggravated criminal sodomy. K.S.A. 21-4704(j)(2); K.S.A. 2012 Supp. 21-6804(j)(2); K.S.A. 22-3717(d)(2)(A), (C), (E); K.S.A. 2012 Supp. 22-3717(d)(5)(A), (C), (E).

On appeal, Campbell argues that the trial court erred by sentencing him as an aggravated habitual sex offender. Campbell recognizes that he had three prior convictions of aggravated indecent liberties with a child before being convicted in this case. Nevertheless, citing *State v. Turner*, 293 Kan. 1085, Syl. ¶ 4, 272 P.3d 19 (2012), Campbell contends that the trial court should have sentenced him as a persistent sex offender because under the rule of lenity, when two statutes are equally applicable, the court must follow the statutory provision that is more favorable to the accused.

Yet, Campbell has misinterpreted *Turner* and applicable statutes. In *Turner*, our Supreme Court examined the application of the aggravated habititual sex offender statute and the persistent offender statute when a defendant has been convicted of *on-grid* sexually violent crimes while having at least two prior sexually violent crime convictions. The plain language of the persistent sex offender statute clearly establishes that its provisions only applies when the defendant is being sentenced to "a presumptive term of imprisonment." In *State v. Wilson*, 294 Kan. 818, Syl. ¶ 1, 280 P.3d 784 (2012), our Supreme Court clarified that "the persistent sex offender statute that permits doubling of a maximum presumptive sentence, does not apply to double the mandatory minimum of 25 years' imprisonment for an off-grid Jessica's Law offense." As a result, Campbell's reliance on *Turner* is misplaced because the defendant in that case was convicted of on-grid crimes.

On the other hand, all six of Campbell's convictions were for off-grid Jessica's Law offenses, each requiring a mandatory minimum sentence of 40 years' imprisonment. See K.S.A. 21-4643(b)(1); K.S.A. 2012 Supp. 21-6627(b)(1). Thus, the persistent sex offender provisions were inapplicable. Moreover, under K.S.A. 21-4643(b)(2)(A) and K.S.A. 2012 Supp. 21-6627(b)(2)(A), the trial court may choose to impose a life sentence without the possibility of parole if the defendant is an aggravated habitual sex offender. In his brief, other than asserting that he should have been sentenced as a persistent sex offender under the rule of lenity, Campbell does not contest that his criminal history qualifies him as an aggravated habitual sex offender. As a result, we conclude that the trial court did not err by sentencing Campbell as an aggravated habitual sex offender.

Affirmed.

9